[No. 3564.   May 25, 1931.]

HOBBS v. CAWLEY.

[299 Pac. 1073.]

Caswell S. Neal, of Carlsbad, for appellant.

Neumann & Bujac, of Carlsbad, for appellee.

OPINION OF THE COURT

BICKLEY, C. J.

Tracy leased real estate to appellee for a period of five years, and in the lease agreement, for a stated consideration of $1, gave appellee an option to purchase upon certain conditions. Appellee thereafter entered into a written contract designated "Lease Agreement" whereby he "demised and leased" to appellant the real estate involved for a period of time expiring coincident with that stipulated in the lease from Tracy to appellee. The lease agreement stipulates that appellant is to pay to appellee a monthly rental in the sum of $65 per month, which is the same amount which on its face appellee was to pay under his lease from Tracy. This lease agreement otherwise contains covenants which are stranger to the lease from Tracy to appellee. For instance, transferee Hobbs to "offer for sale from the gasoline vending station located on said premises, only products of the Magnolia Oil Company, for which company the said first party (appellee) is local wholesale dealer." Hobbs is restrained from assigning the lease or underletting the premises without the consent of appellee. Ten days' grace was given to transferee Hobbs to pay the monthly rents. Appellee reserved the right of re-entry in case of conditions broken. Appellant Hobbs went into possession of the premises under the lease agreement. Later on, appellee assigned his option to purchase to one Moore, and, by subsequent assignments thereof, it reached and was exercised by Swigart and Marques who later successfully maintained suit against appellant Hobbs to eject him from the premises he held under the lease from appellee. Appellant then brought this suit against appellee for damages flowing from the eviction.

The case went to trial, and when plaintiff (appellant) had introduced his evidence the defendant (appellee) moved for a directed verdict for the reason, among others, that the lease agreement between appellee and appellant, in legal effect, was an assignment of the Tracy lease and not a sublease or a lease from appellee to appellant, and

"That by reason of such assignment, the plaintiff Hobbs, stands in the shoes of the appellant Cawley, insofar as any liability he may have to the original lessor, (Tracy) and stands in the shoes

of the defendant, H. E. Cawley, insofar as his rights and duties were concerned, and that no relation of landlord and tenant ever existed between the plaintiff and the defendant to charge the defendant with those things which are commonly charged to a landlord by a tenant where the covenant of peaceful enjoyment is breached, and for the further reason that said instrument being an assignment by its legal effect, there is no implied covenant of quiet enjoyment, and the instrument itself, as shown upon its face, gives no express covenant of enjoyment, and for that reason, there is no damage upon the part of the defendant Cawley."

Other reasons were given, not material to the present inquiry.

The court in rendering its decision said:

"It appears to the Court that there is just a legal question involved, and not a question of fact for the Jury to handle. The question is whether or not the instrument upon which this action circles around is an Assignment or a Lease, and the Court has taken the view that it is an Assignment and therefore sustains the Motion made by the Defendant."

Whereupon the jury rendered its verdict in favor of defendant (appellee). The case is here for review of this ruling of the trial court.

For a discussion as to the distinction between a sublease and an assignment, see Lewis on Leases of Real Property (2d Ed.) page 254; 26 Harvard Law Review, 459; 1 Tiffany, Landlord & Tenant, § 151; 2 Underhill on Landlord & Tenant, § 626; 16 R. C. L. §§ 319-322; and notes in 42 L. R. A. (N. S.) 1084; 7 Ann. Cas. 536.

The rules applicable to the situation are succinctly stated by Rapallo, J., in Stewart v. Long Island R. Co., 102 N. Y. 601, 8 N. E. 200, 201, 55 Am. Rep. 844, which seems to be invariably cited and quoted by the text and note writers and in the later decisions. It was there said:

"The rules relating to the effect of an assignment of a lease are so well settled that it is hardly necessary to do more than refer to them. Where a lessee assigns his whole estate, without reserving any reversion therein in himself, a privity of estate is at once created between his assignee and the original lessor, and the latter has a right of action, directly against the assignee, on the covenant to pay rent, or any other covenant in the lease which runs with the land; but if the lessee sublets the premises, reserving or retaining any such reversion, however small, the privity of the estate is not established, and the original landlord has no right of action against the sublessee, there being neither privity of contract nor of estate between them. Where a lessee of land

leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sublease. The question has frequently, and probably most generally, arisen between the lessee and his transferee, and much confusion will be avoided by observing the distinction between those cases and cases where the question has been between the transferee and the original landlord. In the latter class of cases the rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease; and the essence of the instrument as an assignment, so far as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor, with a power of re-entering for non-payment, nor by its assuming, by the use of the word 'demise' or otherwise, the character of a sublease; and the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. * * * But, as between the original lessee and his lessee or transferee, even though the original lessee demises his whole term, *if the parties intend a lease,* the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them. The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term, is to divest him of any reversionary right, and render his lessee liable, as assignee, to the original lessor; but at the same time the relation of landlord and tenant is created between the parties to the second demise if they so intended." (Italics supplied.)

One of the cases citing and following the foregoing decision is Potts-Thompson Liquor Co. v. Potts (1910) 135 Ga. 451, 69 S. E. 734, 737, where it was said:

"The distinction thus brought out is recognized by many authorities, although not always so clearly stated."

That was a case where an instrument, in terms a sublease, provided for a considerable advance in rent over the first deed, reserved the right of re-entry, required permission to be given by the lessor named in it, from time to time, as to certain matters, and contained also an agreement by the lessor named in it that rent should cease if the premises became untenantable on account of fire. It was held that the intention of the parties was that the relation of landlord and tenant was to be created, and to continue, and that, as between the parties to the subsequent instrument, it was not an assignment of an original lease, but as between them created the relation of landlord and tenant. See, also, Davidson v. Minnesota Loan & T. Co., 158 Minn. 411, 197 N. W. 833, 32 A. L. R. 1418.

As to whether the option in the Tracy lease is an independent contract, whether if the Cawley-Hobbs lease, if an assignment of the original lease, carried with it the option, whether the retention of the option by Cawley retained to him an interest in the estate not conveyed to Hobbs, affords a field of speculation into which we decline to make an excursion.

From the various covenants in the Cawley-Hobbs lease, some of which are absent from the Tracy-Cawley lease, the breach of any of which authorized re-entry by Cawley, it seems manifest that the parties intended a subletting of the property, and not an assignment of the original lease, and their rights and liabilities must be accordingly adjudged.

For the reasons stated, the decision of the trial court is reversed and the cause remanded for a new trial, and it is so ordered.

SADLER and HUDSPETH, JJ., concur.

WATSON and PARKER, JJ., did not participate.