No. 12864

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

WAYNE CARROLL,

Plaintiff and Respondent,

-vs-

RANDALL N. EATON et al.,

Defendants and Appellants.

---

Appeal from:   District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

R. Thomas Garrison argued, Virginia City, Montana

For Respondent:

Chester L. Jones argued, County Attorney, Virginia
City, Montana

---

Submitted:   September 11, 1975

Decided:

Filed:

*Thomas J. Kearney*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

In this appeal this Court is asked to consider and review the rights of the parties concerning the construction of a mining lease. Judgment for plaintiff Wayne Carroll was entered June 10, 1974, in the district court, Madison County, and from that judgment defendants Randall Eaton, M. P. Middleton and John Bolinger appeal.

The properties which are the subject of the contested lease are known as the "Mogul Claims", located in the Gravelly Range Mining District of Madison County. The business dealings between the parties regarding this land date back to 1963. On September 20, 1963, Carroll, as lessee, executed a mining lease with Eaton individually, and as attorney in fact for M.P. Middleton, a citizen and resident of Canada. The lease was to extend for two years "and as long thereafter as ore or minerals * * * shall be produced from said premises in commercial quantities." Upon the lessee's failure to produce ore, the lease was allowed to terminate.

A second lease was drafted by Carroll, and was executed by the same parties on August 16, 1965. In this document, the "habendum clause", or that part of the lease which describes its duration, was set out in much greater detail. The lease again established a "primary term" of two years and a "thereafter term" which was dependent upon the production of ore in commercial quantities for its length. Definitional and delay rental provisions were also included in an attempt to specify the rights of the parties:

> "Commercial quantities shall be and is hereby defined as that quantity necessary to produce to first parties at least $500.00 per year. And in the event of no operations upon said mining claims, the payment by second party to first party of the sum of $500.00 per year as minimum delay rental shall be sufficient to hold said mining claim under this lease and to keep the same in good standing."

Pursuant to lease provisions, the lessee tendered payments of $500 to the lessors in 1966, and again in 1967. A third payment of $500 in delay rental was tendered by the lessee for the purpose of extending the lease another year. Lessors accepted the payment without any attempt to declare a forfeiture or terminate the lease, thereby extending it for a period of one year.

In 1968, the parties entered into a new lease, with provisions identical to those found in the 1965 lease. In lieu of production, the lessee tendered payments of $500 for the years 1969 and 1970. As he had done previously, the lessee again tendered a third delay rental payment for the purpose of extending the lease another year. The check was received by the lessors on August 16, 1971. Lessee heard nothing further until the check was returned to him on April 17, 1972, more than eight months after the check had been received by the lessors.

Lessor Eaton testified that he was employed out of state during most of the time between August 1971 and April 1972. He also stated he knew of the existence of the check, instructed his wife to return it, and that his absence from the state resulted in his inability to ensure the check was returned within a reasonable time. In September 1971, Eaton entered into another lease with John Bolinger. Carroll continued to tender delay rental payments through the years 1972 and 1973 in order to protect his rights. Both checks were promptly returned by lessors.

Under these facts, the district court found the parties intended that the lease be extended, and the lessee was entitled to, and in fact did rely to his detriment upon lessors' retention of his check as confirmation and validation of the lease and its extension. On appeal, it is contended that the district court erred in its construction of the lease and in its application of the doctrine of equitable estoppel. We disagree.

Traditionally, mining leases in Montana and elsewhere have been drafted in two basic and distinct forms. Under the provisions of an "or" type lease, the lessee is obligated to produce or pay delay rentals. The lease can terminate only by mutual consent of the parties during the primary term, failure to pay delay rentals or an action by the lessor to declare the lease forfeited. McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 365, 243 P. 582. When it appears that the parties have executed an "unless" type lease, the lessee has the option to produce, pay delay rentals, or do neither, all without incurring obligation. But failure to act is automatic termination in favor of the lessor. Irwin v. Marvel Petroleum Corp., 139 Mont. 413, 365 P.2d 221.

Here, the trial court properly found that this was an "or" type lease in which the lessee was required to either produce or pay delay rentals. As noted from the cases cited, one reliable method of determining what type of lease is intended is to look at the nature of the obligations incurred by the lessee.

Here, the lease terms obligated the lessee to pay delay rentals in lieu of production for the primary period of two years, in order to keep the lease "in good standing". Had the lessee defaulted in these payments, the lessors would certainly have had the option to insist upon forfeiture or waive it and sue for the rentals due. Thus the parties clearly contemplated an "or" lease, and as such, it was incumbent upon the lessors to declare a forfeiture at the close of the primary term, if that was desired.

It is apparent from the record that no such action was taken by the lessors. The only response to the lessee's tender of delay rentals was to hold the same for a period of time in excess of eight months. Therefore, the net result of the lessee's tender of payment was a valid and binding extension of the lease.

Having resolved this question on the law, there is no need to discuss the doctrine of equitable estoppel or its applicability to the facts.

Judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.