**CAL–AM CORPORATION, Plaintiff and Counter-Defendant, Appellee,**

v.

**Joe Talley SPENCE, Defendant, Appellant,**

**Joseph R. Laird, Jr., Third Party Defendant.**

**No. 80–1013.**

United States Court of Appeals, Tenth Circuit.

Argued July 16, 1981.

Decided Sept. 18, 1981.

John R. Tiwald, Dickson & Dubois, Albuquerque, N. M. (Michael P. Watkins, Dickson & Dubois, Albuquerque, N. M., with him on the brief), for defendant, appellant.

Jonathan B. Cole, Nemecek, Gonzalez & Linsley, Sherman Oaks, Cal., for plaintiff and counter-defendant, appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Defendant-Appellant Joe T. Spence seeks reversal of a final judgment which found the plaintiff-appellee, Cal-Am Corp., not liable on a counter-claim for amounts allegedly due to the defendant-appellant Spence under an Assignment of Material Mining Lease.

Cal-Am is a New York corporation which has its principal place of business in California. The third-party defendant, Joseph F. Laird, Jr., is the president and a director of Cal-Am and a resident of California. Spence resides in New Mexico.

There is no dispute about the facts here and, as a matter of fact, the trial court's findings are not disputed. On August 6, 1976, Spence entered into an agreement entitled Material Mining Lease, with one Felix Chicharello, Sr. As lessee Spence was granted the right to mine and sell material from a tract of land in McKinley County, New Mexico. The property contained humates, a low grade coal useful in fertilizer production. By the terms of the lease, Chicharello was to receive approximately $1.00 per ton of shipped material as a royalty. A clarifying letter provided for payment of $100.00 per month rent for two and one-half acres of land, commencing in the month in which construction of a sacking and processing facility was begun on the property. On the same day, that is August 6, 1976, Spence assigned the Material Mining Lease to Cal-Am Corporation. That assignment called for a $15,000 advance royalty to be paid to Spence; Spence received $14,000 of that amount. Cal-Am assumed all of Spence's duties under the Material Mining Lease, including the royalty obligation to Chicharello. Under the Assignment, Spence was also to receive a royalty of $2.25 for each ton of material mined and sold and these payments were to be made monthly. Other provisions providing for a minimum royalty and a re-entry in the event of default are discussed below.

Following a trial to the court the judge found that Cal-Am's interest in the property was as a tax shelter, which was to be offered to third parties through syndication in a limited partnership. The trial court found that Cal-Am never made a serious effort to profitably mine the property. Following a change in the tax laws, Cal-Am's interest in the property "diminished tremendously." Cal-Am ceased making royalty payments, and sought to negotiate with Spence concerning the lump sum due in August 1977. Thereafter, Cal-Am determined to close the New Mexico operation. On August 27, 1977, after learning of this decision, Spence padlocked the property and removed the rolling equipment present without giving 30 days written notice. The trial court found that Spence took possession of the property for his own benefit.

The action herein was commenced by Cal-Am; Spence was named as the defendant, and damages for breach of contract were sought. Also, the alleged breach consisted of conversion of over 70,000 tons of humates and coal which had been stockpiled on the property and fraudulent misrepresentation. Spence in turn counter-claimed for breach of contract. He alleged that the third party defendant Laird was liable for the actions of Cal-Am as Cal-Am's alleged "alter ego." The trial court found that Spence had not misrepresented the quantity of humates on the property in any way. The court also found that Cal-Am suffered no damage through Spence's acts in taking possession of the material on the property or in failing to give 30 days written notice as provided in the Assignment.

The only part of the trial court's findings of fact and conclusions of law at issue is the holding that by exercising his contractual right to repossess the property, Spence re-

lieved Cal-Am of any further obligations under the contract. Having so found, the court declined to rule on the alter ego question. Spence here urges that the court erred in not permitting him to recover the minimum royalty payment for the year of August 6, 1976 to August 6, 1977. He would have this court reverse that determination and remand to the trial court for a ruling on the alter ego question. Cal-Am has not cross appealed and urges that this court affirm the trial court's judgment and order.

New Mexico law governs in this case. Spence argues that the Assignment at issue is actually a sublease. By analogy to law governing landlord-tenant relations, Spence urges that the minimum royalty ought to be treated like accrued rent, which he is entitled to recover in spite of having exercised his right to retake possession of the property under the contract.

The Supreme Court of New Mexico has said:

It is settled law in this jurisdiction that if a lessee conveys the entire term, and thereby parts with all reversionary interests in the property, the transaction is construed to be an assignment. However, if the tenant, by the terms, conditions and limitations in the instrument, does not part with the entire term granted him by the landlord so that there remains a reversionary interest, however small, it is a sublease. *May v. Walters*, 67 N.M. 297, 354 P.2d 1114 (1960), citing *Hobbs v. Cawley*, 35 N.M. 413, 299 P. 1073 (1931); *DeBaca v. Fidel*, [61 N.M. 181, 297 P.2d 322 (1956)]. *Spears v. Canon De Carnue Land Grant*, 80 N.M. 766, 461 P.2d 415, 417 (1969).

In *Hobbs v. Cawley*, cited above, the New Mexico court determined that as between the first lessee/sublessor and his sublessee, the question of whether an assignment or a sublease exists is to be determined by the intent of the parties.

In the present case, Spence transferred the entire term of the Chicharello lease to Cal-Am. Cal-Am assumed all of Spence's rights and duties under the lease and the document itself is titled "Assignment of Material Mining Lease." The only interests retained by Spence were the right to receive royalty payments and the right to retake possession in the event of default in rent or royalty payments. So it would appear that the conveyance here in question is an assignment. *See, Haynes v. Eagle-Picher Co.*, 295 F.2d 761 (10th Cir. 1961), *cert. denied*, 369 U.S. 828, 82 S.Ct. 846, 7 L.Ed.2d 794 (1962). However, *Spears v. Canon De Carnue Land Grant* suggests that in New Mexico, this conveyance would be considered a sublease. This opinion is not entirely clear, but it appears that there the effect of a conveyance was found to be a sublease, where the sublessor retained only a right of re-entry upon condition broken. In this case, Spence clearly retained a right of re-entry on a condition broken. We accept Spence's contention that the conveyance be treated as a sublease.[1]

Appellant has argued that the general rule allows a landlord to exercise a contractual right to re-enter and declare the forfeiture of the lease without foregoing the right to accrued rent. *Camelback Land & Investment Co. v. Phoenix Entertainment Corp.*, 2 Ariz.App. 250, 407 P.2d 791 (1965); *Schuldes v. Wubbolding*, 15 Ariz.App. 527, 489 P.2d 1229 (1971). *See also, Heighes v. Porterfield*, 28 N.M. 445, 214 P. 323 (1923). There is also authority for the view that generally a provision for a minimum royalty can be treated like a provision for rent. *Lehigh Zinc & Iron Co. v. Bamford*, 150 U.S. 665, 14 S.Ct. 219, 37 L.Ed. 1215 (1893); *Mullins v. Evans*, 43 Tenn.App. 330, 308 S.W.2d 494 (1957); 54 Am.Jur.2d, Mines and Minerals, § 135 (1971); 49 Am.Jur.2d, Landlord and Tenant, § 514 (1970). A well accepted principle also exists to the effect that while a landlord who exercises a right to re-enter may recover rent accrued to the date of re-entry, the lessee may not be held

1. It should also be noted that there is some authority for the view that retention of a royalty interest is a characteristic of a lease, not an assignment. 3 American Law of Mining, Rocky Mountain Mineral Law Foundation, § 16.64 (Cum.Supp.1980), n. 1b.

liable for rent accruing after the date of re-entry. *Burns Trading Co. v. Welborn*, 81 F.2d 691 (10th Cir. 1936), *cert. denied*, 298 U.S. 672, 56 S.Ct. 936, 80 L.Ed. 1394 (1936); *Heighes v. Porterfield, supra.*

All of the general rules are subject to the overriding proposition that parties are at liberty to control the terms of their relationship by contract. *Owen v. Burn Construction Co.*, 90 N.M. 297, 563 P.2d 91 (1977); *Atlantic Refining Co. v. Beach*, 78 N.M. 634, 436 P.2d 107, 110 (1968); *Burns Trading Co. v. Welborn, supra; Camelback Land & Investment Co. v. Phoenix Entertainment Corp., supra; Wilson v. Pate*, 17 Ariz.App. 461, 498 P.2d 535 (1972); *Adkins v. Adams*, 152 F.2d 489 (7th Cir. 1945). It is important to note that the Assignment that is here the basis for the lawsuit contains the following two paragraphs which are cogent to the present issue:

3. Assignee guarantees to pay for a minimum 33,333 tons each year for the first three years. In the event less than 100,000 tons are mined during the three years, Assignee shall pay no further royalty to Assignor until the total tons shipped and paid for exceeds 100,000 tons. *In the event that Cal-Am*, and/or its nominees or assigns, *shall default in the rental and/or royalty payments* due as provided herein, and shall continue in default for 30-days after receipt of written, registered mail notice of such default, then, and at the option of SPENCE, *SPENCE may terminate this agreement, retain all monies previously paid as rentals, repossess* the demised premises, *and this agreement shall, at that time, be of no further force or effect* as to either party hereto. (emphasis added).

■ Paragraph 6 of the Assignment specifically covers the present problem. Under this paragraph if Spence exercises his rights, he may treat money previously received as rental payments and retain it. However, in that event, the Agreement ceases to be of any effect. Spence may *not* seek additional money not yet paid. This is the way the trial court construed it and we fully agree with that conclusion.

*Lehigh Zinc & Iron Co. v. Bamford, supra*, is not at odds with this conclusion. Although the Court there allowed recovery of a minimum royalty, it appears that the lessors did not exercise their rights under a termination clause as Spence did here. In *Westminister Corp. v. Neptune Uranium Corp.*, 144 Colo. 281, 355 P.2d 1095 (1960), the Colorado court was confronted with facts similar to those before us in this case. There, the purchaser had defaulted in payment of an installment due on the purchase of certain mining leases. The contract contained a clause allowing the seller, on default of the purchaser, to terminate the agreement. In such event, the purchaser was to "forfeit all payments made ... as liquidated damages." The court rejected the contention that a past-due installment could be treated as a "payment made," and denied recovery of those amounts. In this case, the contract allows retention of amounts "previously paid" and this makes it even clearer that Spence is not entitled to recover sums due but not received. *Cf., Tungsten Products, Inc. v. Kimmel*, 5 Wash.2d 572, 105 P.2d 822 (1940).

■ It is important to emphasize that in a lease of this type, there are valid reasons for providing that a landlord is not to terminate the lease and at the same time recover minimum royalties. *Cf., Carroll v. Eaton*, 168 Mont. 150, 541 P.2d 64 (1975). Here the lease provides for both a $15,000 advance royalty and a minimum royalty on 33,333 tons per year. Secondly, the lease provides that after three years, no further royalties are necessary until the quantity of material actually sold exceeds 100,000 tons. Thus, the sublessee is required to make minimum royalty payments, but those payments can eventually be offset against actual sales. By exercising the right to terminate the lease, the sublessor cuts off the lessee's opportunity to actually sell the material on which a royalty has been paid without liability for additional royalties. Thus, while minimum royalties are generally considered to be analogous to rent, in our view the minimum royalty at issue here exhibits distinguishing characteristics which

cannot be overlooked. Those characteristics and the clear language of paragraph 6 of the Assignment convince us that Spence was not entitled to both termination of the Agreement and recovery of the minimum royalty.

This is not to say that Spence's exclusive remedy was that which he chose here, namely termination or recision. *See Roberson Construction Co., Inc. v. Montoya*, 81 N.M. 566, 469 P.2d 715 (1970); *Hopper v. Reynolds*, 81 N.M. 255, 466 P.2d 101 (1970); *Gruschus v. C. R. Davis Contracting Co.*, 75 N.M. 649, 409 P.2d 500 (1965). He elected to proceed under paragraph 6 and thereby became bound by its terms. By choosing the benefits of immediate termination of the contract, Spence also is bound by the limitations of the clause.

Spence's suggestion is that because Cal-Am did not raise election of remedies as an affirmative defense, we should find that Spence may recover the minimum royalty. We disagree with this contention. Spence's claim to the minimum royalty rested solely on his rights under the Agreement. True, Cal-Am failed to specifically assert an election of remedies defense, however the proper interpretation of the Agreement was at issue from the time that the counterclaim was filed.

Cal-Am did not waive any defense; it denied that any money was due to Spence as a minimum royalty. In its initial pleadings, Cal-Am denied that any additional royalties were due to Spence, except a portion of the proceeds from humates stockpiled on the property. As a further defense, Cal-Am alleged that by retaking possession, Spence waived any claim to royalties accruing after the date of re-entry. Spence argues that this statement indicates a concession that the minimum royalty for the first year is owed to Spence. We do not agree. There was a specific denial that the minimum royalty was due and payable on August 6, 1977. Although Cal-Am might well have articulated its position in clearer terms, it doesn't follow that Spence is entitled to a minimum royalty. Surely Cal-Am didn't concede such a thing. In the pre-tri-

al order Cal-Am denied any breach of the minimum royalty provision. Hence Spence's right to the minimum royalty was clearly in issue throughout the case and was properly ruled on by the trial court.

For the reasons which are hereinabove noted, our ruling is that the judgment should be and is affirmed.