JOHN D. IRWIN, JR., Special Administrator of Estate of
Charles W. Tobin, Deceased, Plaintiff and Respondent,
v. MARVEL PETROLEUM CORPORATION, a Montana
Corporation and E. BADEN POWELL, Defendants and
Appellants.

No. 9860.
Submitted April 13, 1961. Decided October 10, 1961.
365 P.2d 221.

Ralph L. Herriott (argued orally), Billings, Ryan, Kain & Mikan, Minneapolis, Minn., Dennis B. Gordon, Helena, for appellants.

Sandall, Moses & Cavan, Charles F. Moses (argued orally), Billings, for respondent.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

Charles W. Tobin was the owner of three federal oil and gas leases covering real property in Wyoming. The three leases are designated as Serial No. Wyoming 04204 (hereinafter referred to as Lease No. 1) containing 214.08 acres; Serial No. Evanston 021951 (hereinafter referred to as Lease No. 2) containing 1812.48 acres and Serial No. Evanston 021952 (hereinafter referred to as Lease No. 3) containing 451.74 acres.

On April 20, 1951, Tobin assigned the three leases to E. Baden Powell, one of the defendants. The three assignments were identical in language, with the exception of the acreage and land description. Thereafter, Lease No. 1 was "assigned" or "leased" by Powell to the Marvel Petroleum Corporation, a Montana corporation, (hereinafter referred to as Marvel). Lease No. 2 was held in trust by Powell and subsequently allowed to terminate. Lease No. 3 was "assigned" or "leased" by Powell to David P. Bushnell who subsequently transferred it to Marvel. The rentals, owed to the government, were paid by Marvel on all three leases.

In September 1955, Evelyn G. Tobin as the surviving heir of Charles W. Tobin, deceased, filed a complaint against Powell and Marvel. The gravamen of the complaint alleged the failure of the defendants to pay delay rentals which were claimed to be owing by reason of the assignments between Tobin and Powell. The relevant paragraphs (paragraph 7 in each of the assignments) are identical and read as follows:

"Commencing two years from the date hereof if Assignee

has not theretofore commenced drilling operations on said land or terminated its interest in the aforesaid lease as provided herein, the Assignee shall pay or tender to the Assignor One ($1.00) Dollar per acre per year in advance as rental for so much of said land as may then be held under said lease until drilling operations are commenced or Assignee's rights are terminated as herein provided, and in the event of failure by Assignee to so commence drilling operations or to pay such rental, this assignment shall terminate and Assignee shall reassign the lease to Assignor.''

Plaintiff alleged on information and belief that the oil and gas leases had been assigned by the defendant, E. Baden Powell, to the Marvel Petroleum Corporation.

Plaintiff, Evelyn G. Tobin, claimed that because of defendants' failure to pay the rental as provided there was now due and owing the following amounts; for Lease No. 1, the sum of $642.24; for Lease No. 2, the sum of $5,437.44 and for Lease No. 3, the sum of $1,355.22 resulting in an over-all total of $7,434.90.

Subsequently, John D. Irwin, Jr., the special administrator of the estate of Charles W. Tobin, was substituted as plaintiff. The cause was tried before the court sitting with a jury and a verdict was rendered against the defendants Powell and Marvel in the sum of $7,434.90.

The defendants, appellants here, allege that the trial court erred in its rulings on the defense motions for judgment on the pleadings, nonsuit, and a directed verdict. It is also alleged that the court erred in giving several instructions. In support of these specifications of error, the defendants have advanced four arguments which are as follows:

1. That a proper construction of paragraph 7 of the assignments from Tobin to Powell would preclude any obligation on the part of the defendants to pay the delay rentals.

2. That the leases had been terminated by Tobin on May 18, 1953.

3. That there was no evidence before the court that John D. Irwin, Jr., was the duly appointed, qualified and acting administrator of the estate of Charles W. Tobin. Also, there was no evidence of a bond filed on behalf of Mr. Irwin as special administrator of the Tobin estate.

4. The court erred in instructing the jury because the plaintiff failed to prove any liability on the part of Marvel to pay the delay rentals.

The defendants' arguments will be considered in the order stated above.

First, the contention that a proper construction of paragraph 7 of the assignments from Tobin to Powell would preclude any liability on the part of either defendant. The trial court construed paragraph 7 as the "or" type of drilling and delay rental clause. The defendants contend that paragraph 7 is the "unless" type of drilling clause. The distinction between the "or" and "unless" lease clause and the legal liability attached thereto has previously been before this court. In McDaniel v. Hager-Stevenson Oil Co., 75 Mont. 356, 364, 243 P. 582, 585, this court considered in great detail the distinction between these clauses. It was stated: "In order to arrive at an understanding * * * it is essential to consider two well-known types of oil and gas leases, and the fundamental difference between the two. Indeed, a correct understanding of the question involved here cannot be arrived at without doing so.

"These are denominated 'or' and 'unless' leases in the nomenclature of the oil fields and in legal literature anent the same. Under the provisions of the 'or' type the lessee is obliged to either 'drill or pay'; under the 'unless' type he is not obligated to do either. In other words, under the first type, if the lessee does not drive a well within the exploratory period fixed, he must pay such rental as is prescribed in the lease, and, if the rentals be not paid, suit to recover them will lie at the instance of the lessor. [Citing cases.] Failure to drill or pay would not of itself terminate the lease. [Citing cases.]

"The forfeiture clause was held to be for the benefit of the lessor, who upon default of the lessee could either insist upon a forfeiture or waive it and sue for the rentals due, or as they became due within the fixed term of the lease. [Citing cases.] Until the lessor elected to declare a forfeiture, liability for rent continued. [Citing cases.]

"The 'or' lease does not terminate short of the period provided in the *habendum* clause, unless, by mutual consent of lessor and lessee, surrender by the lessee when that remedy is provided by the terms of the lease, or by forfeiture declared by the lessor. If the lessor desires to insist upon a forfeiture in order to rid his land of the lease, it is necessary for him to exercise his option and declare the lease forfeited. This requires affirmative action by the lessor. [Citing cases.]

"In order to get away from the burdensome provisions of the lease adverted to, oil operators sought to free themselves from its stringent requirements by inserting in leases what has become known as the surrender clause under which they were privileged to surrender the lease and avoid further liability. But until surrender they were still held to their obligation to drill or pay, and lessees frequently found themselves liable for the payment of rentals.

"Therefore the second type, or 'unless' lease, was devised. The provision that, if no well be commenced on the land within a certain period, the lease should become null and void, unless the lessee should pay to the lessor for further delay a certain amount per year in advance for each additional year until a well be commenced, or, completed (with occasional verbal changes here and there), became standard. Under this clause the lessee was granted an option to drill or to pay rental, or to do neither as he chose. And under it the lease terminated *ipso facto* upon the failure to drill or pay, without further liability on the part of the lessee for rentals thereafter accruing."

For additional authority on the distinction between "or"

and "unless" lease clauses see, 2 Summers, Oil & Gas, §§ 331-351; Sullivan, Handbook of Oil and Gas Law, §§ 45-60.

It is in the category of the "or" type lease that the assignments between Tobin and Powell belong. By the terms of paragraph 7, if drilling operations had not been commenced within two years, Powell was obligated to pay delay rentals. There were also provisions for surrender of the leases to escape the burdensome provisions of the obligation to drill or pay. In addition, there was a provision for forfeiture of the lease, which is solely for the benefit of the lessor. Therefore, as paragraph 7 of the assignments admits of no other construction except that of an "or" lease clause, the trial court's construction was correct.

Secondly, the defendants claim that even if the lease clause was the "or" type of clause, the defendants were not liable because the leases had been forfeited by Tobin in a letter to Marvel. The letter written by Tobin and dated May 18, 1953, concerned the three leases here in question and stated:

"The foregoing captioned oil and gas leases [Leases No. 1, 2 and 3] were assigned by C. W. Tobin, under date of April 20, 1951, to E. Baden Powell. It is my understanding that Mr. Baden Powell has assigned the leases to the Marvel Petroleum Company.

"The assignment provides, under paragraph 7, page 5, of said assignment that the assignee shall pay to the assignor one dollar per acre per year, in advance, as rental, should the assignee fail to commence drilling operations within a period of two years from date of assignment.

"The assignment is now in default by reason of failure of the assignee to commence drilling, or to pay the additional cash bonus as rental.

"I am therefore demanding that the leases be reassigned to me within a period of ten days from the date of receipt of this notice."

The remedies available to a lessor under a "drill" or

"pay" lease clause are either to bring an action for rent or to forfeit the lease. The first of these remedies assumes the continued existence of the lease, while the second terminates the lease. The remedies are inconsistent, and it has been stated that an election by the lessor to forfeit the lease necessarily bars an action for rent. 3 Summers, Oil and Gas, § 440; Clemenger v. Flesher, Tex.Civ.App. 1916, 185 S.W. 304.

However, the question remains as to what acts constitute an election of a remedy? It is stated in 28 C.J.S. Election of Remedies § 18, p. 1094: "Generally the mere giving of notice of an intention to pursue a certain course, which is not acted upon by either party, or which does not alter or affect the position of the party receiving it, is not such an election of remedies as will bind the party serving it so as to preclude pursuing a different course * * *."

In Morgan v. Hidden Splendor Mining Co., D.C.Utah 1957, 155 F.Supp. 257, the plaintiff had an election to either forfeit a lease or to bring an action for the recovery of damages for failure to do the contracted development work. Plaintiff sent a notice of forfeiture. The defendant asserted that the plaintiff had elected his remedy and was precluded from bringing an action for damages. The court stated at page 261:

"It will be seen that the 'forfeiture' provided in the lease is coupled with, and dependent upon, a surrender and delivery up of the possession of all of said mining claims to the lessor. To say that there was an election of remedy by mere notice when the defendant still insists that it has the right to possession and in fact maintains possession as far as the record discloses would be to extend that doctrine and the language of the contract unduly. [Citing cases.]"

In the instant case, Tobin, prior to his death, sent a notice of forfeiture to the defendant Marvel but no further action was taken. Marvel remained in possession of the leasehold until the present action was commenced some two years later. In addition, for Tobin to have clear title the defend-

ants would have to surrender or release the leasehold, or Tobin would have to bring the appropriate action to clear his title. Under these circumstances, we hold that the notice of forfeiture did not constitute an election of a remedy. Therefore, Tobin's administrator was not prevented from bringing an action for the delay rentals.

Third, it is contended that John D. Irwin, Jr., as such special administrator was not a proper party plaintiff.

Letters of administration were issued to John D. Irwin, Jr., and said letters appearing regular on their face were received in evidence.

In Lane v. Starkey, 59 Cal.App. 140, 142, 210 P. 277, 278, the court said that "letters of administration regular on their face may be attacked only in a direct proceeding and not collaterally. They are conclusive evidence of the due qualification and authority to act of the administrator and of the regularity of the proceedings leading up to their issuance in a case of collateral attack. [Citing cases.]"

This principle was again reiterated in Estate of Way, 29 Cal.App.2d 669, 85 P.2d 563. See also, In re Hainks Estate, Sur., 135 N.Y.S.2d 502, affirmed without opinion App. Div., 139 N.Y.S.2d 250; In re Upton's Estate, 199 Wash. 447, 92 P.2d 210, 123 A.L.R. 1220; Alexander, Commentaries on Wills, § 1367. Therefore, under the authorities quoted above, the defendants are prohibited from attacking the appointment of Irwin if the attack herein is a collateral attack on the issuance of the letters.

A collateral attack is "every proceeding in which the integrity of a judgment is challenged, except those made in the action wherein the judgment is rendered or by appeal, and except suits brought to obtain decrees declaring judgments to be void *ab initio.*" Burke v. Inter-State Savings & Loan Ass'n. 25 Mont. 315, 321, 64 P. 879, 881; Haupt v. Simington, 27 Mont. 480, 483, 71 P. 672; Daly Bank & Trust Co. v. State, 132 Mont. 387, 395, 318 P.2d 230.

In Thomas v. Oklahoma Tax Commission, 198 Okl. 301, 304, 177 P.2d 498, 502, the court quoting from Powers v. Brown, 122 Okl. 40, 252 P. 27, stated:

" 'A "collateral attack" on a judgment or judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner other than by appeal, writ of error, certiorari, or motion for a new trial, or by proper action in equity.' "

The attack on the appointment of John D. Irwin, Jr., is a collateral attack. It is an attempt to defeat the issuance of the letters of administration in an independent and unrelated proceeding.

The defendant's final argument is that the court erred in its instructions to the jury because of the failure of the plaintiff to prove any liability on the part of Marvel to pay the delay rentals. Prior to an examination of this specification it should be stated that the principles previously discussed in this opinion establish liability on the part of the defendant Powell for the delay rentals.

Over the objections of the defendants, the court gave the following instruction:

"You are instructed that it is the law in this state that a voluntary acceptance of the benefits of a transaction is equivalent to a consent to all of the obligations arising from it; you are therefore instructed that if you find from the evidence in this case that E. Baden Powell, or his successor in interest, Marvel Petroleum Corporation, or Charles W. Tobin, or his successor in interest, exercised acts of ownership over the leases from the time of the agreements between the parties until the present time and dealt with the property and treated and used the leases as their own and claimed ownership therein, then in such event the party who thus voluntarily accepted the benefits of the transaction will be held to be bound by such contracts."

The above-quoted instruction does not properly state the

law in a situation such as the present. It predicates liability on the voluntary acceptance of the benefits of a transaction and ignores the agreements between the parties. In addition, the instruction fails to differentiate between a party holding as an ''assignee'' and one holding as a ''sublessee''.

In McNamer Realty Co. v. Sunburst, 76 Mont. 332, 345, 247 P. 166, 171, the distinction between an ''assignment'' and a ''sublease'' was made. The court stated:

''An 'assignment' is defined as 'a transfer of title or interest by writing, as of a lease, bond, note or bill of exchange' * * * and carries the whole interest of the assignor. [Citing cases.] Thus 'an assignment of a lease' signifies a parting with the whole term [Citing cases.] whereas, no matter by what name it is called, if by an instrument in writing a lessee grants an interest less than his own, retaining for himself a reversion, it is a sublease and not an assignment of his lease.''

The court went on to point out that if a party holds under a ''sublease'' as distinguished from an ''assignment'', there is neither privity of estate nor privity of contract between the sublessee and the original lessor. The rights and liabilities of the sublessee must be determined from the sublease. However. if a party is an assignee, whatever remedies the lessor has against the lessee may be enforced against an assignee of the lessee. See section 67-705, R.C.M.1947.

In Sunburst Oil & Refining Co. v. Callender, 84 Mont. 178, 274 P. 834, this court held that the reservation of an overriding royalty would stamp an instrument as a ''sublease''.

Marvel may stand in one of two legal positions. Marvel may be an ''assignee'' as defined by the McNamer Realty Co. case, supra, and as a result be bound to pay the delay rentals under section 67-705. However, Marvel may be a ''sublessee'', in which event its rights and liabilities must be determined from the sublease. See McNamer Realty Co. v. Sunburst, supra.

In each of the above instances, it is possible to find that Marvel dealt with the property and treated and used the leases

as their own and claimed ownership therein. However, if Marvel held as a "sublessee", they would not necessarily be liable for the delay rentals.

Therefore, to establish liability on the part of an alleged assignee, such as Marvel, the law in this state requires more than a showing of a voluntary acceptance of the benefits of a transaction. The plaintiff must prove by an express contract the alleged assignee held under an "assignment" rather than a "sublease". The jury should have been so instructed.

This instruction was prejudicial to Marvel. However, as to Powell it was not prejudicial error. Powell's liability was not predicated on the voluntary acceptance of the benefits of the transaction, but rather other instructions based the liability of Powell on the express agreements between him and Tobin.

Since Marvel is granted a new trial we should comment that because of the distinction between assignments and subleases, to establish liability on the part of an alleged assignee the nature of his obligation must be shown. The evidence must be clear and convincing that he holds as an assignee and not as a sublessee.

No court can speculate as to the nature of the instruments between Powell, Bushnell and Marvel.

As a result of the conclusions expressed previously in this opinion, the disposition of this case raises the question whether the judgment may be affirmed as to one defendant and a new trial granted as to the other.

It is the rule of common law, that a judgment against two or more defendants is an entirety and if reversed as to one must be reversed as to all. 143 A.L.R. 8. However, this rule of common law has been abrogated in this state. In Mellon v. Kelly, 99 Mont. 10, 24, 41 P.2d 49, this court held a judgment against joint tort-feasors may be reversed as against part of the defendants and sustained as to the others. This decision is in accord with the present judicial doctrines of other jurisdictions. See 50 C.J.S. Appeal and Error § 1919.

 Because the error in the instant case is prejudicial only as to Marvel, justice would not be served by granting both defendants a new trial. Therefore, a new trial is granted to the defendant Marvel and the judgment is affirmed as to the defendant Powell.

MR. JUSTICES ADAIR, DOYLE, CASTLES and JOHN C. HARRISON concur.