No. 83-113

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JOHN KUHNKE, Individually, and as
Personal Representative of the Estate
of ANNABELLE KUHNKE, Deceased,

Plaintiff and Appellant,

-vs-

JOHN A. FISHER, DOUGLAS W. ALVORD,
AND BOZEMAN DEACONESS HOSPITAL,

Defendants and Respondents.

---

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable W. W. Lessley, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John D. Alexander argued, Great Falls, Montana
Paul Luvera, Jr., argued, Vernon, Washington

For Respondents:

Berg, Coil, Stokes & Tollefson; Ben Berg, Jr. argued
for Fisher, Bozeman, Montana
Wellcome & Frost; Page Wellcome argued for Alvord,
Bozeman, Montana
Poore, Roth & Robinson; Douglas Buxbaum argued for
Bozeman Deaconess Hospital, Butte, Montana

---

Submitted:   January 12, 1984

Decided:   May 24, 1984

Filed:   MAY 24 1984

_Ethl M. Harrison_

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case the Gallatin County District Court, Eighteenth Judicial District, granted summary judgment against a claim for the wrongful death of an unborn child. Judgment was entered on jury verdict against the plaintiff John Kuhnke on his claim that the death of his wife occurred through the malpractice of the defendant doctors and hospital. On Kuhnke's appeal from both decisions we affirm the summary judgment against his claim for the death of the unborn child; and we reverse the judgment against the plaintiff on his claim for the wrongful death of the wife.

I.

Stated simply the first issue is whether the Montana courts may entertain an action for the claimed wrongful death of a fetus under our wrongful death statute. Plaintiff has stated the issue in terms of a "viable fetus."

Annabelle Kuhnke, 8 months pregnant, was admitted to Bozeman Deaconess Hospital, on May 11, 1978. On May 12 she was pronounced dead in the hospital. Her unborn fetus died with her. John Kuhnke, the husband of Annabelle and the father of the unborn child, charges their deaths were the result of the professional failures of the hospital and of Drs. John A. Fisher and Douglas W. Alvord. The District Court granted the pretrial motion of all defendants for summary judgment, dismissing the claim for recovery for the wrongful death of the fetus.

An action for the wrongful death of a fetus was unknown to the common law. Kuhnke must found his claim on the terms of section 27-1-512, MCA, which states:

"27-1-512. Action by parent or guardian for injury to or death of child or ward. Either parent may maintain an action for the injury or death of a minor child and a guardian for injury or death of a ward when such injury or death is caused by the wrongful act or neglect of another . . ."

The issue is not new although it is presented in this Court for the first time. By a ratio of better than 2 to 1, the majority of states have ruled in favor of permitting a wrongful death action on behalf of an unborn child. 84 A.L.R.3d 411 (1978). The division of courts is recognized in Restatement (Second) of Torts, § 869, which follows:

"Section 869. Harm to an unborn child. (1) One who tortiously causes harm to an unborn child is subject to liability to the child for harm if the child is born alive.

"(2) If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides." (Emphasis added.)

As it sometimes occurs, among those states which have passed on the question differing conclusions have been reached as to whether "the applicable wrongful death statute so provides," even though similar terms are used in the statutes. For example, California holds against such right of action, Justus v. Atchixson (1977), 19 Cal.3d 564, 565 P.2d 122, 139 Ca. Rptr. 97. The states of Washington and Idaho hold otherwise, recognizing such actions. Volk v. Baldazo (1982), 103 Idaho 570, 651 P.2d 11; Moen v. Hanson (1975), 85 Wash. 597, 537 P.2d 266.

In Justus, the California court referred to section 377 of its Civil Code of Procedure which provides a wrongful death action for a "minor person." The California Supreme Court determined to focus not on the word "minor," but on the word "person" to determine whether its legislature intended an unborn fetus to be included within the latter

- 3 -

term. 565 P.2d at 130. The court then determined, relying essentially on Roe v. Wade (1973), 410 U.S. 113, 161, 93 S.Ct. 705, 731, 35 L.Ed.2d 147, that such an action is not permitted. In Roe, the Supreme Court found that the unborn have never been recognized in law as persons in the whole sense, for purposes of the Fourteenth Amendment. The California court held that the legislature, adopting the statute providing for wrongful death action was creating an entirely new cause of action where none was thought to exist before, and intended to occupy the field of recovery for wrongful death. Therefore as a court, it could not enact a judge-made provision for such action.

In Moen, the Washington court considered the effect of its wrongful death statute which refers to "a minor child." It concluded that a viable fetus was a "child," and that the term "minor" did not disqualify a fetus because the purpose of the term "minor" was to mark the upper boundary of the parents' potential cause of action. The Washington court was impressed with the hypothetical example in Stidam v. Ashmore (1959), 109 Ohio App. 431, 167 N.E.2d 106, involving twins wrongfully injured simulanteously in womb, one born alive and one stillborn. The Ohio court concluded that to allow recovery for only one of the twin victims is logically indefensible. Washington decided to follow the example of the majority states, including Oregon and Illinois in recognizing the cause of action. See, Libbee v. Permanente Clinic (1974), 268 Or. 258, 518 P.2d 636, 520 P.2d 361; Chrisafogeorgis v. Brandenberg (1973), 55 Ill.2d 368, 304 N.E.2d 88.

In Idaho, the wrongful death statute provides an action for a "minor child." The Idaho Supreme Court examined this

statute in Volk v. Baldazo (1982), 103 Idaho 570, 651 P.2d 11 and held that the term "minor child" marks the upper age limits beyond which the parents' cause of action may not be extended, but that the term did not preclude a wrongful death action on behalf of a viable unborn fetus which died of injuries and hence was never born alive. In reaching its decision, the Idaho court determined that in that state a cause of action would lie on behalf of a viable fetus which sustained prenatal injuries but was subsequently born alive. It concluded that if a viable fetus had survived the injuries and could pursue a cause of action on his or her own behalf for those injuries, a wrongful death action where the death of the fetus occurred through injury was not precluded where another statute provided that a child conceived but not yet born is an existing person whose interests can be protected. The Idaho court was impressed with the purpose of wrongful death statutes, to provide damages to those persons who are bereaved or suffer a loss by virtue of the death of the victim.

What the cases reflect is an honest difference of opinion among the state courts as to the effect to be given to nearly similar provisions. For example, in Justus, the California Supreme Court responded to sections 25 and 26 of its Civil Code. Section 25 provided that "minors are all persons under 21 years of age." Section 26 specified that "the periods specified in the preceding section must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority." The California Court of Appeal in Norman v. Murphy (1954), 124 Cal.App.2d 95 , 268

- 5 -

P.2d 178, had relied on those provisions to exclude an unborn fetus from the class of "minor persons" referred in its section 377. The Supreme Court in Justus held such reasoning to be erroneous, saying that the purpose of section 26 was to facilitate computation not on the beginning but on the end of the period of minority. 565 P.2d at 130.

We differ from California in such reasoning. We have a similar statute, section 41-1-102, MCA, which provides that the period of minority "must be calculated from the first minute of the day on which persons are born to the same minute of the corresponding day completing the period of minority." In our opinion, that statute defines what is a "minor child." Under that statute, an unborn or stillborn fetus does not qualify as a "minor." Therefore it cannot be a minor child.

That there is a field here in which the legislature should act is beyond question. Wrongful death statutes are remedial, having a compensatory purpose. As the Washington court noted in Moen, "mental anguish and grief at bereavement are clearly experienced by the parent whether or not a viable fetus survives to full term," 537 P.2d at 268. Because our statute, section 41-1-102, MCA, points so directly at defining the period of minority, we hold that the legislature has indeed occupied the field in defining what is a minor child. A statute that allows for the recovery of the wrongful death of an unborn or stillborn child must await legislative action. We affirm the District Court's summary judgment against the action for the death of the unborn fetus in this case.

The bench and bar should recognize the limited scope of this opinion. It refers only to the right to sue for the

wrongful death of unborn or stillborn fetuses. It has no reference to criminal actions relating to unborn fetuses. It has no reference to prenatal injury sustained by a fetus subsequently born. We are not called upon, in view of our decision, to determine whether a cause of action for wrongful death applies only to a viable fetus.

II.

We reverse the defendant's judgment in favor of the defendants on the claim for the wrongful death of the wife on the grounds of improper argument by one of counsel for the defendants during final summation.

The "Good Samaritan" Argument

In instruction no. 14, the jury was told by the District Court that it was no defense to the plaintiff's claim that the defendant Dr. Alvord was rendering emergency care or assistance without compensation to Annabelle Kuhnke.

That instruction became the law of the case. The jury was not to consider that Dr. Alvord was not Annabelle's regular doctor, that he was simply helping out another doctor, and that he would receive no compensation for his effort.

In spite of the court's instruction, the following argument occurred:

> "MR. WELLCOME: There has been an interest in the case by the medical community in Bozeman because what it would indicate is if you find a verdict against Dr. Alvord, then no physician in the community of Bozeman is going to feel that he can at any time, get involved in a situation where somebody asked him to help out and where somebody says, 'Please come in and help this particular patient. I know it's not your patient, I know you have no responsibility to do that, but, I really need your assistance. Will you help?'
>
> "And of course, there is a medical ethic too, that they take that requires that type of help, but,

look at it, they're really caught between the proverbial rock and a hard spot.

"MR. LUVERA: Excuse me, Your Honor, I thought you defined the law for the Jury, I thought that that's what this --

"THE COURT: I did and I think --

"MR. LUVERA: I object.

"THE COURT: I can understand that, but, I'm going to let him argue that.

"MR. WELLCOME: That is a critical point in this case, ladies and gentlemen, there is no doubt about it. Because if you award and arrive at a verdict contrary to Dr. Alvord in this case, then you say to him and you say to the medical community, 'Don't get involved in this type situation because you'll be dragged along by the plaintiff, and dragged along by your fellow practitioners, and dragged along by the hospital in which you practice your profession.' It simply should not -- it shouldn't happen under the facts and circumstances of this particular case."

Plaintiff moved the District Court for a new trial following the adverse verdict. The District Court denied the same. In Bliss v. Wolcott (1910), 40 Mont. 491, 107 P. 423, the District Court granted a new trial and we affirmed because defense counsel in his argument to the jury in summation argued matters that were outside of the record and had been withdrawn from the jury by the court. In Bliss, we stated:

"A party is entitled to have a trial upon the evidence properly in the case; and while it is true, as counsel for defendant argue, that if the court had persisted in sending the case to the jury upon the theory upon which the instructions were formulated, the plaintiff would have had no cause of complaint, yet, in overruling the objection of counsel for plaintiff and permitting opposing counsel to call the attention of the jury to the excluded evidence, as furnishing a reason why plaintiff should not recover, it allowed the jury to consider evidence not before them. The behavior of counsel was indefensible. The court should not have permitted it. The motion for a new trial was properly granted." 40 Mont. at 496-97, 107 P. at 425.

Here the cause comes to us on the denial of the motion for a new trial by the district judge. The stance on the law is, however, the same. In the light of the court's instruction, the argument was indefensible.

Reputation of the Defendants

Before trial, the District Court had entered an order in limine prohibiting reference to the effect of the lawsuit on the reputation of the doctors and the hospital. Nonetheless, the same counsel made the following comment in final argument:

"So, if you're going to prevent what I believe and submit is this gross miscarriage of justice, if you're going to answer Dr. Alvord in the affirmative as I think you should, does this jury understand what's happening to me in this courtroom? What they're doing to me and I think you do."

Again the order of the court in limine established the boundaries as to the law of the case for counsel to observe. The argument was improper.

Out of Town Witnesses and Parties

Further comments were made by counsel for Dr. Alvord which were outside the record. He argued:

"Everybody is going to go home. You understand that Dr. Mattox is already back in New Mexico, Dr. Darvill has gone back to Washington, Mr. Luvera is going to go back to Washington, Mr. Kuhnke is going to, I don't know if it's to Alaska or to Thompson Falls, as he's indicated. Who's going to be left here? Who's going to be left here in this community? Well, I am, Dr. Alvord is, he's going to continue practicing medicine in this community as he has since he came to Bozeman as an internal medicine specialist."

In Pederson v. Dumouchel (1967), 72 Wash. 73, 431 P.2d 973, the Washington court held that such argument was an appeal to local prejudice and passion and in effect a method to turn the jury into a "home-town rooting section." Washington held that a case should be argued upon the facts

without an appeal to prejudice and it did not approve of this kind of argument. Nor do we.

Unpaid Bills

In another attack on final argument, counsel for Dr. Alvord referred to the fact that the funeral bill for Annabelle Kuhnke had not been paid. He stated:

> "The only thing you want to keep in mind in this case then I'm going to pass on from damages, is that here we've got somebody who comes into our community and wants us, ladies and gentlemen of this jury, to assess a large verdict against these defendants here and he's been in this community before and he was here in May of 1978 and his wife was hospitalized and unfortunately, certainly she died, but what is the status of the funeral balance?

> "MR. LUVERA: I object as highly prejudicial, irrelevant, a comment by counsel on it. I really would like to be heard on that. I think that it's so --

> "THE COURT: I'm not going to interfere I have great confidence in that jury.

> MR. LUVERA: Very well.

> "THE COURT: Listen to this argument.

> "MR. WELLCOME: All right. My recollection and you trust your own, is that Mr. Kuhnke on the witness stand was asked 'Was the funeral bill paid?' And he said, 'No, Sir.' That's my only point."

It was completely irrelevant to the cause of action being tried that the funeral bill was not paid at the time of trial, for here the implication is strong that the plaintiff was a deadbeat.

We need cite no authority that when a person is injured or has suffered death through the wrongful death of another, the incurrence of the medical bills and the funeral costs, without more, is sufficient to establish a basis for the recovery of damages. In an action for the wrongful death of an adult, such damages may be given as under all the circumstances of the case may be just, section 27-1-323, MCA.

- 10 -

The only limitation is that damages must in all cases be reasonable, for no more than reasonable damages can be recovered, section 27-1-302, MCA. No statute, and no case law, requires the payment of medical bills before payment can be recovered in a wrongful death cause.

In answering the issue of improper argument, defendants' counsel have presented argument that the trial court is in the best position to judge the prejudice to the jury from the statements; that the refusal of the trial court to set aside the verdict must be upheld unless its discretion was abused; that there is substantial evidence to support the defendants' verdict; that great latitude is allowed in oral argument; that the court's instruction that the statements of counsel to the jurors was not to be considered as evidence and could be disregarded should be accorded value; and one of counsel suggests that if a new trial be granted it should be as to Dr. Alvord only.

In Brothers v. Town of Virginia City (1976), 171 Mont. 352, 558 P.2d 464, we held that where there is substantial evidence to support the verdict, the District Court's refusal to grant a new trial would not be disturbed. That decision, however, is applicable when the ruling of the District Court is based on whether there is substantial evidence to support the jury's verdict, and no other element affects the jury verdict. If the jury had returned a verdict in favor of the plaintiff in this case, we should be constrained on review of the record to hold that there was substantial evidence in favor of the plaintiff. What controls is that in this case, where there was conflicting but substantial evidence on both sides of the issue, and where it appears that one of the parties was prevented from receiving a fair trial by improper

argument in summation, the question of whether substantial evidence supports the jury verdict in spite of the oral argument does not arise. The acid of the improper argument may have eaten away the substantial evidence presented by the plaintiff and left only prejudice against him. When a party's right to a fair trial has been materially impaired by improper jury argument, the fact of the imperfect trial transcends the substantial but conflicting evidence that supports the jury verdict.

The District Court's rulings as to the conduct of counsel in this cause, including the denial of new trial, are to weighed against his obvious concern about what was happening in his courtroom:

> "THE COURT: I have been terribly disturbed about Mr. Wellcome's conduct in this case from the very start. Mr. Wellcome does not heed the court's rulings, he's had me shouting at him during the period of time of court. His--I don't know what I would characterize his final argument as counsel for the plaintiff but he went as far as he could and I understand his concern and I understand his client's concern but that there was a threat in that where he stated to the jury that Dr. Alvord has been here all the time and his wife has been here all the time and his--they will be here when the verdict is given, concerned me and the--you will destroy the integrity and the feeling and the practice of medical professions, all disturbs me but I don't think that anything will be added to the justice of this situation by my instructing the jury and I'm not going to do it."

The court made that statement in deciding not to further instruct the jury about the improper argument.

Counsel for Dr. Fisher point out that Rule 59(a), M.R.Civ.P., gives the court the option to grant a new trial "to all or any of the parties," and suggest that under Irwin v. Marvel Petroleum Corporation (1961), 139 Mont. 413, 424, 365 P.2d 221, 226, we grant a new trial to one of the

defendants, and affirm the judgment in favor of the other defendants.

It is impossible in this case to separate the defendants in considering the effect of the prejudice created by the argument of one of counsel for one of the defendants. We have not set forth in detail the facts in this case upon which plaintiff claims the death of Annabelle was the result of the wrongful acts of the professionals here. It is enough to say that the evidence presented by the plaintiff included professional testimony which cast blame upon one or all of the defendants. In like manner, the defendants presented professional testimony and in some instances, their witnesses blamed one or other of the remaining defendants. It may have been possible in this case, if the cause had been fairly tried, that one or more of the defendants would have received a defendant's verdict, and depending upon the weight and credibility given to the testimony by the jury, such jury action would be sustained. There is no way now to measure how the prejudicial argument may have affected not only Dr. Alvord, but each of the remaining defendants. The only way to be sure which, if any, of the defendants should be exonerated or whether plaintiff should recover at all is to grant a new trial.

### III.

The District Court had also ordered *in limine* that no reference was to be made to the fact that John Kuhnke had remarried after the death of his wife, Annabelle.

In the trial of this cause, that order of the District Court may have been violated in two facets.

In an action for the wrongful death of an adult, such damages may be given as under all the circumstances of the

- 13 -

case may be just, section 27-1-323, MCA. One of the elements of such damages, in the case of the wrongful death of a wife and mother, is the reasonable value of the services that she could reasonably have been anticipated to perform for the surviving husband and surviving children in the future. Proof of that element of damages may be supplied by testimony from qualified persons or experts as to the reasonable costs in the community for such services as a cook, housekeeper, babysitter, gardener, and so on, assuming of course, foundation for those items. The jury may consider such testimony in determining the reasonable value of the lost future services of the wife. It is not germane to a consideration of such damages that the husband may have remarried, or that he may not have hired anybody to take her place for those various services. Questions in that vein are improper and should be overruled. If in fact the surviving spouse does hire a person or persons to supply the lost services, this fact can be established in discovery, and the costs of such services can be admitted for the jury to consider in determining the value of the lost services. If however, discovery has shown that such services have not been replaced in that manner, a question at trial such as that directed to the husband in this case, whether he had actually hired somebody to perform the services, is irrelevant. Again, it is the incurrence of the loss of the wife's services resulting from the wrongful death that provides a basis for the damages.

It can also be said without further citation that damages become fixed as of the moment of the injury. Therefore, remarriage of a spouse in a wrongful death case is irrelevant and should not be referred to in any manner.

We make these comments for the guidance of the District Court in the new trial.

### IV.

The plaintiff John Kuhnke raised two other issues which are unnecessary for us to discuss in view of our reversal for a new trial. One relates to the limitation of voir dire and the seating on the jury of Dr. Alvord's personal physician. As a prospective juror, the doctor consistently maintained that he could hear the case fairly. We would not reverse the case on that ground.

The remaining issue by the plaintiff is whether the jury verdict in favor of the defendants' is supported by substantial evidence. In view of our finding that the trial was imperfect, and prejudicial to the plaintiff, it is not necessary at this juncture to determine whether substantial evidence supported either side. We find that there was conflicting evidence substantial for either side, which if believed by a jury, would support a verdict for either side. The evidence in favor of the plaintiff is not so overwhelming, although it is substantial, that we must in good conscience order a verdict in favor of the plaintiff and reverse for a new trial on the issue of damages only. We decline to do so on the record before us.

### V.

Accordingly, we affirm the decision of the District Court in granting summary judgment with respect to the wrongful death of the unborn child; we reverse the judgment in favor of the defendants and remand this cause for a new trial as to all issues arising out the claimed wrongful death of Annabelle Kuhnke.

- 15 -

_____
                  Justice

We Concur:

_____
       Chief Justice

_____

_____

_____

_____
          Justices

- 16 -

Justice Daniel J. Shea, concurring:

Special concurrence:

Although I do not agree with some of what is stated in the majority opinion, I nonetheless join the majority in ordering a new trial because of what I consider to be the cumulative and prejudicial error by counsel for Douglas W. Alvord in his final arguments to the jury.

_____
Justice