No. 93-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

ALEXA M. STRZELCZYK, Individually,
and as Personal Representative
of the Estate of JOHN MATTHEW
STRZELCZYK, deceased; and ALEXA
M. STRZELCZYK as next friend of
JEREMIAH S. STRZELCZYK, and AMANDA
M. STRZELCZYK, minors,

     Plaintiffs,

  -v-

STANLEY JETT, M.D.,

     Defendant.

FILED

MAR 17 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   United States District Court
                District of Montana, Great Falls Division
                The Honorable Paul Hatfield, Judge presiding.

COUNSEL OF RECORD:

     For Plaintiff:

          John Iwen, Great Falls, Montana; Timothy J.
          McKittrick, McKittrick Law Firm, Great Falls,
          Montana

     For Defendant:

          Neil E. Ugrin & Nancy P. Cory, Ugrin, Alexander,
          Zadick & Slovak, Great Falls, Montana

          Certified Question Submitted:  February 16, 1994

                         Decided:  March 17, 1994

Filed:

                              Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This case is before the Court on Certified Question from the United States District Court, District of Montana, Great Falls Division. This Court heard oral arguments on February 16, 1994 concerning the following question:

Does the State of Montana recognize a claim of wrongful death for a stillborn fetus?

Under the facts of this case, the answer is yes.

The facts of this case are not in dispute. At the time of the delivery, Alexa Strzelczyk (Alexa) and Dr. Stanley Jett (Jett), were both residents of the State of Montana residing in the Chinook area. Dr. Jett was licensed to practice medicine in this state. On or about June 12, 1989, Alexa visited Dr. Jett for the first time and thereafter, became his patient.

Medical records show that Alexa's expected date of delivery was January 7, 1990. Alexa was diagnosed as a diabetic during her pregnancy, but medical records indicate that she controlled her diabetes. The fetus maintained a normal heartbeat throughout the pregnancy and as late as January 15, 1990, the heartbeat was normal at 140. On January 17, 1990, an ultrasound was performed on Alexa and it was determined at that time that the fetus had died. Dr. Frank Miller was called in and delivered the stillborn fetus on January 18, 1990, at Northern Montana Hospital, Havre, Montana.

Alexa filed an application with the Medical Malpractice Panel pursuant to § 27-6-701, MCA, against Dr. Jett on December 24, 1991. A decision was rendered on July 14, 1992, determining that a cause

2

of action existed. Subsequently, on August 11, 1992, Alexa filed a complaint alleging malpractice against Dr. Jett. Dr. Jett removed the action to federal district court on January 6, 1993, because of diversity. Both Dr. Jett and Alexa now live in different states.

United States Magistrate Robert M. Holter, heard oral argument on the case and recommended that the matter be certified to the Montana Supreme Court because of this Court's holding in Kuhnke v. Fisher (1984), 210 Mont. 114, 683 P.2d 916. Kuhnke held that the then existing wrongful death statutes did not support a claim for wrongful death of a stillborn fetus. In view of the legislature's subsequent revisions of the wrongful death statutes, and Judge Holter's recommendation, Federal Judge Paul G. Hatfield certified the question to this Court. Pursuant to Rule 44 of the Montana Rules of Appellate Procedure, this Court accepted jurisdiction by order dated April 15, 1993.

Does the State of Montana recognize a claim of wrongful death for a stillborn fetus?

Dr. Jett filed a motion to strike that part of the amended complaint which refers to the wrongful death action, arguing that the Montana Court in Kuhnke would not recognize such a claim for a stillborn fetus. On appeal, plaintiff argues that the Kuhnke case was decided before the legislature modified the applicable wrongful death statute. Following the Kuhnke decision, the legislature changed the statute and according to plaintiff, a plain reading of that statute in conjunction with other applicable statutes

3

indicates that a wrongful death claim for a stillborn fetus is appropriate.

Dr. Jett contends that the legislature changed the statute only to prohibit double recovery on claims. Further, Dr. Jett argues that the Kuhnke case is still applicable because this Court stated therein that any future recovery by a fetus must await a statutory change by the legislature. Dr. Jett's assertion is that although the legislature changed the wording of the statute it did not provide wording that would allow recovery for a wrongful death action.

While it is true that Kuhnke held that no cause of action for wrongful death will lie for a stillborn fetus, it did so based upon the 1985 language in the wrongful death statute. We confine ourselves to a comparative consideration of two versions of the applicable statutes, the version of statutes reviewed by the Kuhnke Court and the 1987 changes to those statutes which govern the case before us.

At the time of the Kuhnke decision, Montana's wrongful death statute stated:

> **Section 27-1-512, MCA (1985). Action by parent or guardian for injury to or death of child or ward.** Either parent may maintain an action for the injury <u>or death of a minor child</u> and a guardian for injury or death of a ward when such injury or death is caused by the wrongful act or neglect of another. Such action may be maintained against the person causing the injury or death or, if such person be employed by another person who is responsible for his conduct, also against such other person. (Emphasis added.)

In 1987, this section was changed to read:

4

**Section 27-1-512, MCA (1987--1993). Action by parent or guardian for injury to child or ward.** Either parent may maintain an action for the injury to <u>a minor child</u> and a guardian for injury to a ward when such injury is caused by the wrongful act or neglect of another. Such action may be maintained against the person causing the injury or, if such person be employed by another person who is responsible for his conduct, also against such other person. (Emphasis added.)

We note that "or death" has been excised from this statute. The attendant statute previously read:

**Section 27-1-513, MCA (1985). Action for wrongful death of adult.** When the death of <u>one person, not being a minor</u>, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death or, if such person be employed by another person who is responsible for his conduct, then also against such other person. (Emphasis added.)

In 1987, this section was also changed to read:

**Section 27-1-513, MCA (1987-1993). Action for wrongful death.** When injuries to and the death of <u>one person</u> are caused by the wrongful act or neglect of another, the personal representative of the decedent's estate may maintain an action for damages against the person causing the death or, if such person be employed by another person who is responsible for his conduct, then also against such other person. (Emphasis added.)

<u>Kuhnke</u> interpreted the term "minor child" for purposes of a wrongful death claim. We determined that a fetus was not a minor child and could not, based upon this lack of connection, maintain a cause of action for wrongful death. In 1987, § 27-1-512, MCA, dropped all language indicating an action for "death" of a minor child; only injury was still included. Also, the 1987 changes to § 27-1-513, MCA, dropped all distinction between minor and adult

5

and only specified "one person." Therefore, what we must interpret is "person" not "minor child."

Considering the language in Kuhnke indicating that we must wait for the legislature to change the law to permit an action for wrongful death of stillborn fetus, we note that the legislature has changed certain language in the wrongful death statute. It has not placed the words "stillborn fetus" into the statute, but it remains for us now to interpret who is a "person" for purposes of this case. We will not read into statutes something that is not there. State ex rel. Neuhausen v. Nachtsheim (1992), 253 Mont. 296, 833 P.2d 201. Our function as an appeals court is to ascertain what the legislature meant and to do that if possible, by looking to the plain meaning of the words in the statute. State ex rel. Roberts v. Public Service Com'n of the State of Montana (1990), 242 Mont. 242, 790 P.2d 489. Therefore, we will not consider the legislative history of the changes made to these statutes if we can interpret the statutes themselves without such a quest.

In our attempt to ascertain who all the legislature included in the word "person" with the 1987 changes we look to another of the legislature's own definitions of what constitutes an "unborn child":

> A child conceived but not yet born is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth. (Emphasis added.)

Section 41-1-103, MCA. The case before us presents us with a healthy fetus until past its delivery date. It was a child conceived, but not yet born. It was subsequently born, but not

6

alive. Yet, the statute does not indicate that a live birth is necessary for the child to be a "person." We decline to read the word "live" into this statute.

The legislature could have very easily inserted the word "live" in § 41-1-103, MCA, just as it did in § 50-15-101(1), MCA:

> "Fetal death" means a birth after 20 weeks of gestation.
> . . . that is not a <u>live birth</u>. (Emphasis added.)

We determine that the legislature knew that a birth could be live or not live and it would have used the term "live birth" if that is what the legislature meant. Therefore, we conclude the word "birth" in § 41-1-103, MCA, means all forms of birth, including a "still" birth.

Section 41-1-103, MCA, also contains the words "so far as may be necessary for its interests." This phrase makes the determination of whether a fetus is a person fact specific. It indicates that each case must be considered carefully in order to determine if the circumstances present make it "necessary" for the fetus to be determined a person in order to protect some interest.

We conclude that according to the facts stated previously, this full-term fetus should be considered a "person."

We hold that under the facts of this case the State of Montana recognizes a claim of wrongful death for a stillborn fetus.

_____
Justice

We Concur:

_____
Chief Justice

7

John Conway Harrison

William E. Hunt Sr

_____

_____
Justices

Justice Karla M. Gray, specially concurring.

I concur in the Court's opinion on this purely legal certified question and in its straightforward analysis and interpretation of the statute at issue and its application to the facts before us. As a result of emotional and unsupported oral arguments made by counsel for Dr. Jett, I specially concur here in order to address briefly what this case is not about.

This is not an abortion case or a case related in any way to a woman's constitutional right to privacy and to an abortion under Roe v. Wade (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. The termination of a pregnancy by abortion is an intentional, consensual act by a woman and her physician which the law specifically allows. The case before us, like virtually all wrongful death actions, is based on an allegation that the pregnancy was terminated by the wrongful act or omission of Dr. Jett; that is, it is an action based in negligence.

Counsel's related, but ill-developed, arguments that permitting a wrongful death action under these facts would somehow criminalize abortion or conflict with Uniform Probate Code provisions are equally unsupportable. Counsel cited no authority whatsoever in support of her arguments that our holding in this case would have the adverse and dire consequences she predicts.

Given the fact that at least 32 states allow a wrongful death action under facts similar to those before us, counsel's total failure to support the arguments advanced is notable, indeed. The

9

purpose or intent of such arguments can only be a matter of speculation. Suffice it to say that the arguments were not grounded in legal analyses or interpretation.

_____
Justice

Justice Terry N. Trieweiler and Justice James C. Nelson join in the foregoing special concurrence of Justice Karla M. Gray.

_____
Justice

_____
Justice

10