No. 86-159

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

JOHN KUHNKE, Individually, and as
Personal Representative of the Estate
of ANNABELLE KUHNKE, Deceased,

　　　　　Plaintiff and Appellant,

　-vs-

JOHN A. FISHER, DOUGLAS W. ALVORD
and BOZEMAN DEACONESS HOSPITAL,

　　　　　Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,
　　　　　In and for the County of Gallatin,
　　　　　The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellants:

　　　　　Alexander & Baucus; John Alexander argued for Kuhnke,
　　　　　Great Falls, Montana
　　　　　Paul Luvera argued for Kuhnke, Mount Vernon, Washington
　　　　　Monte D. Beck, (Kuhnke), Bozeman, Montana
　　　　　Arnold Huppert, Jr. argued for Appellant Wellcome,
　　　　　Livingston, Montana
　　　　　Garlington, Lohn & Robinson; Sherman V. Lohn argued
　　　　　for Appellant Aetna Ins., Missoula, Montana

　　　For Respondents:

　　　　　Berg, Coil, Stokes, et al; Ben E. Berg, Jr. argued for
　　　　　Fisher, Bozeman, Montana
　　　　　Wellcome, Frost & Bartlett; Page Wellcome argued for
　　　　　Alvord, Bozeman, Montana

　　　　　　　　Submitted: March 4, 1987

　　　　　　　　Decided: May 20, 1987

Filed: MAY 20 1987

_Ethel M. Harrison_

　　　　　　　Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Plaintiff, John Kuhnke, appeals from judgment entered upon a jury verdict in the Eighteenth Judicial District in favor of defendants John A. Fisher, M.D., and Douglas W. Alvord, M.D. Aetna Insurance Company and counsel for Dr. Alvord appeal the District Court order imposing sanctions for trial misconduct. We affirm in part, reverse in part and remand.

On May 1, 1978, Annabelle Kuhnke, 6-8 months pregnant, consulted with Dr. John Fisher of Bozeman to act as her physician. Annabelle was obese, 42 years of age, and experiencing her ninth pregnancy. All of these factors contributed to a high risk pregnancy.

The Kuhnke family had recently moved from Alaska. The record is not clear as to when Annabelle had last seen an obstetrician. Her Alaska medical records were not forwarded to Dr. Fisher.

Dr. Fisher examined Annabelle on May 1 and 8. The two visits to Fisher's office indicated that Annabelle was doing fine. However, after the check-up on May 8, she began experiencing extreme abdominal pain and went to the emergency room at Bozeman Deaconess Hospital. Dr. Fisher prescribed five Percodan tablets to be taken over the next two days.

On May 11, 1978, at approximately 7:00 p.m., Annabelle was admitted to Bozeman Deaconess Hospital in an exhausted condition. She evidenced shock. She had experienced sleeplessness for 4 days, had diarrhea and had been vomiting all day. Dr. Fisher was contacted and he gave telephone orders for fluid infusion, urinalysis, and a complete blood count.

Attending Nurse Shaklin observed Annabelle had blue nail beds and blue lips indicating poor circulation. Her veins had collapsed making it impossible to monitor blood pressure. Annabelle's pulse and respiration were abnormally high. Shanklin was unable to start an IV so she contacted Dr. Alford, an internist making rounds at the time. With Alvord's assistance, they were successful in starting the IV therapy. Dr. Fisher arrived shortly thereafter.

Dr. Fisher examined Annabelle's abdomen and uterus. He determined that there was extra fluid in the uterus but nothing serious. Closer examination of the uterus ruled out abruptio placentae (separation of the placenta from the uterus). Annabelle was not experiencing any costovertebral pain which Dr. Fisher believed ruled out the possibility of kidney infection. Dr. Fisher diagnosed the problems to be hydramnios, an excess of fluid in the inner layer surrounding the fetus, and gastro-enteritis, an inflammation of the stomach and intestines caused by vomiting and dehydration. Infusion of fluids and electrolytes were given for dehydration.

Both Fisher and Alvord believed that Annabelle was in shock when admitted. By 9:00 p.m., her condition had improved with pulse, respiration, and blood pressure back to normal. Dr. Alvord left to finish his rounds. Dr. Fisher remained with Annabelle, who had recovered sufficiently to converse with him. Dr. Fisher left at 10:30 p.m. convinced that Annabelle was doing fine. At home, he called at 11:30 p.m. before going to bed, and was told that Annabelle was stable.

At 11:30 p.m., Nurse Weigand relieved Nurse Shanklin. Annabelle's vital signs began to deteriorate around midnight with respiration and pulse rising. No call was made to either doctor. At 2:00 a.m., the nurse taking the vitals

noticed a small emesis, no radial pulse, and she was unable to take a blood pressure. Arterial pulse was 160 with respiration of 40 per minute.

At 3:00 a.m., Nurse Weigand called Dr. Alvord at home to report Annabelle's vital signs. Dr. Alvord did not sound concerned and told Nurse Weigand to continue with the fluid orders. Later, Dr. Alvord would say he didn't remember the call specifically, but that he didn't sense an emergency. By 4:00 a.m., Annabelle's skin was cold and clammy, her extremities were turning blue, and her pulse remained abnormally high. Nurse Weigand called her nursing supervisor. They monitored Annabelle, who was now making inappropriate remarks and was in need of oxygen. At 5:15 a.m., Dr. Alvord was called and he arrived at 5:35 a.m. At 5:50 a.m. Annabelle was pronounced dead.

Dr. Alvord hypothesized the cause of death to be sepsis, (a poisoning of the blood), or obstetrical catastrophy. Dr. Fisher arrived at 6:00 a.m. He was unable to hear any fetal heart tones. Dr. Fisher listed the cause of death as irreversible shock from severe dehydration due to gastroenteritis. The cause of Annabelle's death remains unknown for Mr. Kuhnke declined to have an autopsy performed.

Mr. Kuhnke filed a malpractice action against the hospital and Drs. Alvord and Fisher. The first trial resulted in a jury verdict in favor of defendants. However, this Court reversed and remanded for a new trial due to the misconduct of Page Wellcome, counsel for Dr. Alvord. Kuhnke v. Fisher (Mont. 1984), 683 P.2d 916, 41 St.Rep. 952.

Prior to the second trial, the District Court granted 21 of 23 motions in limine filed by plaintiff's counsel in an attempt to guarantee proper conduct by counsel during the trial. The trial commenced October 1, 1985, and lasted 12 days.

The trial testimony is voluminous. Plaintiff's experts testified that up to 19 tests should have been conducted to insure Annabelle's recovery from shock. All witnesses noted that the urinalysis ordered by Dr. Fisher was never performed, and the results would have likely provided some answers. Plaintiff's experts concluded Annabelle should not have died and that Drs. Alvord and Fisher did not exercise due care.

Drs. Alvord and Fisher defended their treatment methods, yet admitted not inserting a urinary catheter which would have allowed them to monitor Annabelle's fluid balance. She did not void at anytime subsequent to admission. Drs. Alvord and Fisher believed their treatment was appropriate for a shock victim.

The hospital settled with plaintiff during trial. The case was submitted to the jury on a special verdict allowing negligence to be attributed to: 1) Annabelle; 2) the hospital; 3) Dr. Fisher; 4) Dr. Alvord. The jury found the hospital to be solely negligent.

Plaintiff filed a motion for new trial and/or judgment notwithstanding the verdict and motion for sanctions against Page Wellcome for trial misconduct. The District Court denied the motions for new trial and judgment notwithstanding the verdict, but ordered sanctions in the amount of $20,000 against Wellcome and Aetna Insurance Company, Alvord's insurance carrier.

On appeal, the following issues are raised:

1) Whether the District Court erred in denying plaintiff's motion for new trial based upon the trial misconduct of counsel for Dr. Alvord?

2) Whether the assessment of sanctions by the District Court was proper?

3) Whether the District Court should have granted plaintiff's motion for judgment notwithstanding the verdict?

4) Whether the District Court erred in submitting to the jury an issue of contributory negligence on the part of Annabelle?

5) Whether the District Court erred in submitting to the jury the question of percentage of fault of the settling party?

Plaintiff raises innumerable instances of misconduct by counsel for Dr. Alvord, during jury voir dire, witness testimony, and closing argument. Plaintiff contends this misconduct deprived him of a fair trial.

Defendant Dr. Alvord argues that plaintiff may not raise any issues relating to the evidence presented at trial because plaintiff has provided a partial transcript on appeal without filing notice of such. While plaintiff has technically violated Rule 9, M.R.App.Civ.P., we find the omitted portions are not relevant to the issues on appeal.

In Kuhnke I, we reversed and remanded for a new trial due to counsel's: 1) good samaritan argument; 2) argument as to the verdict's effect on Alvord's reputation; 3) numerous comments that plaintiff and the expert witnesses were from out of town and other states; 4) reference to the unpaid Kuhnke funeral bill. A review of the transcript of the second trial reveals Wellcome again raised the first three of these arguments.

Prior to trial, the District Court entered an order in limine prohibiting inquiry concerning various matters not relevant to the case. Wellcome violated several of the specific prohibitions including: 1) reference to the fact that the Kuhnke's were living in a Winnebago; 2) reference to the previous trial in questioning a witness; 3) comments regarding the presence of Dr. Alvord's family in the

- 6 -

courtroom and the effect of the lawsuit on Dr. Alvord's reputation.

The standard of review for this Court in determining whether a mistrial was appropriately denied is whether there is manifest abuse of the District Court's broad discretionary power. Walter v. Evans Products Co. (Mont. 1983), 672 P.2d 613, 616, 40 St.Rep. 1844, 1847.

The District Court, in this case, carefully considered the conduct of the offending attorney, the possibly prejudicial effect which his improper statements may have had on the jury, and fairness to the parties. The District Court judge heard the entire trial and is in the best position to determine the prejudicial effect of the attorney's blatant misconduct on the jury.

Although there was flagrant disregard by Wellcome for plaintiff's motions in limine, court admonitions, warnings and objections by opposing counsel (which were repeatedly sustained), the District Court judged that the trial was fair to all parties. The District Court concluded that "a) the misconduct was not of the magnitude of that found in the first Kuhnke trial, and (b) that viewed in the context of the entire trial, the improper conduct did not impact the jury to such an extent as to warrant a new trial."

The record shows substantial credible evidence which supports the verdict reached by two juries on two separate occasions hearing the same facts. It is unlikely that a third trial heard before a third jury will produce a different result.

We affirm the jury verdict and judgment in favor of Dr. Fisher and Dr. Alvord.

By refusing to grant a retrial for appellant, we are in no way condoning or ignoring Wellcome's courtroom antics. His comments regarding Dr. Alvord as a "good samaritan," the

effect of the verdict on Dr. Alvord's reputation, and out of record statements were entirely improper. It was also improper to suggest that the settlement made with the hospital was adequate as plaintiff's recovery and to improperly state the law, claiming that only an internist could testify against an internist. There were numerous other improper statements and arguments made by Wellcome which cannot be considered to be inadvertent mistakes.

In this case, the jury returned a verdict finding the hospital solely liable for Annabelle Kuhnke's death. In light of this verdict, and the complete record, the District Court determined that the misconduct of Dr. Alvord's attorney was not substantially prejudicial. We will not disturb that decision.

Under the present facts, the appropriate solution to adequately protect against such unprofessional and unethical behavior by counsel in the future is severe sanctions. The District Court imposed a $20,000 sanction against Wellcome and Aetna Insurance Company (Aetna). In the post-trial order, the district judge listed extensive trial misconduct by Wellcome. Wellcome blatantly disregarded the court's rulings throughout the trial.

Section 37-61-421, MCA, provides that any attorney or party who unreasonably multiplies the proceedings in a case "may be required by the court to satisfy personally the excess costs, expenses and attorney fees reasonably incurred because of such conduct."

Although § 37-61-421, MCA, was enacted after Kuhnke I, it was in effect at the time of the retrial and is applicable. We hold that Wellcome was responsible for the retrial of Kuhnke I, and for attempting to cause a second mistrial. Sanctions imposed by the District Court against him are entirely appropriate.

In view of the claims of plaintiff that the court did not allow an adequate amount to cover the costs and fees of the Kuhnke retrial, we direct the District Court to examine the issue in light of § 37-61-421, MCA.

The record indicates that Aetna did not receive prior notice that the motion for sanctions included Aetna in addition to Wellcome. As we are remanding the sanction award, the issue of proper notice is moot. Whether Aetna should be held liable for Wellcome's misconduct is an issue to be addressed by the District Court.

The third issue is whether the District Court should have granted plaintiff's motion for judgment notwithstanding the verdict. We find the District Court was correct in denying the motion. The evidence is conflicting and the case was properly sent to the jury. A directed verdict is not proper unless there is a complete absence of any evidence to warrant submission to the jury. Jacques v. Montana National Guard (1982), 199 Mont. 493, 504, 649 P.2d 1319, 1325 citing Cities Service Oil Co. v. Laurey (5th Cir. 1968), 403 F.2d 537; see also Rudeck v. Wright (Mont. 1985), 709 P.2d 621, 42 St.Rep. 1380.

Plaintiff's next contention is that the District Court erred in submitting to the jury an issue of contributory negligence on the part of Annabelle. The jury did not find Annabelle contributorily negligent, so the issue is moot and need not be addressed.

The last issue raised on appeal is whether the percentage of fault of the hospital should be submitted to the jury.

Section 27-1-703(2), MCA, provides that where "more than one person is found to have contributed as a proximate cause to the injury complained of, the trier of fact shall

apportion the degree of fault among such persons. Contribution shall be proportional to the negligence of the parties against whom recovery is allowed." Although the District Court used the legal ("substantial factor") rule as the burden of proof instead of the proximate cause ("but for") rule, Rudeck, 709 P.2d at 628-629, § 27-1-703, MCA is useful in determining whether a settling party may be held responsible for contributory negligence. The general rule is that a settling party does not fall under "parties against whom recovery is allowed," as once a party settles with a plaintiff, he is no longer required to contribute. Rather, the plaintiff's recovery is diminished by the amount of consideration paid by the settling concurrent tortfeasor. State ex rel. Deere v. District Court (Mont. 1986), 730 P.2d 396, 404-405, 43 St.Rep. 2270, 2280.

Typically, when there are multiple defendants in a concurrent negligence situation, the percentage of negligence which is attributable to a settling party would not be properly put before the jury.

In the case at bar, however, the hospital settled after commencement of the trial at issue. The court was faced with a situation where the jury had already heard evidence concerning the hospital's contributory negligence. After much consideration and research, the District Court gave the following jury instruction:

> In this case the plaintiff has made a settlement with the Bozeman Deaconess Hospital. The amount of the settlement has been disclosed to the court but not to the jury.
>
> If you should find under the Court's instructions that the plaintiff is entitled to recover against the defendant's John A. Fisher, M.D. and/or Douglas W. Alvord, M.D., then you shall award damages to the plaintiff for the same amount you would have awarded if no such settlement had been made.

> In such event the court will later deduct the amount of this settlement from the amount of your award and your verdict will be reduced accordingly.

In this situation, the record is such that a jury may reasonably differ as to the divisibility of negligence. "In that event the court must instruct the jury that it may if able to do so, divide the harm and therefore apportion the damages." Azure v. City of Billings (1978), 182 Mont. 234, 254, 596 P.2d 460, 471.

To ask the jury in this case not to consider the hospital's negligence after the jury heard evidence concerning the hospital as a co-defendant and concurrent tortfeasor would: 1) force the jury to ignore that which it had already heard; and, 2) allocate comparative negligence without the opportunity to compare the negligence of all potentially culpable defendants.

It can be presumed that the hospital's settlement had some impact on the jury's verdict, but to what extent will never be known. The carefully worded instruction given by the court safeguards against the possibility of the jury denying recovery to the plaintiff due to a belief that plaintiff would then receive a double award. The instruction accurately states the current law in Montana.

The only way to have avoided the jury's consideration of the hospital's negligence would have been to declare a mistrial at the time of settlement. Whether to grant or deny a mistrial was within the discretion of the court and we will not disturb the decision of the District Court barring a clear abuse of that discretion. Under the unique and complex facts of this case, we find no abuse of discretion or error and affirm the decision of the District Court to submit the hospital's negligence to the jury.

Affirmed in part, reversed in part and remanded.

_____
                                    Justice

We Concur:

_____
        Chief Justice

_____

_____


_____
            Justices


Mr. Justice L. C. Gulbrandson, specially concurring and dissenting.

I concur in all of the Court's opinion except the discussion and characterization of the defense attorney's conduct and the remand for consideration of additional sanctions against said attorney and the liability insurer for Dr. Alvord. I would also vacate the award of $20,000 as a sanction against Aetna Insurance Company inasmuch as Aetna was not a party to the action and had no notice of the motion for sanctions.

_____
        Justice


- 12 -

Mr. Justice John C. Sheehy, dissenting:

I must disagree with the majority opinion.

It is incongruous that the District Court could hold that Wellcome's improper actions had no effect on the jury verdict on one hand, but that they were serious enough to require sanctions of $20,000 against him on the other. Those two concepts so militate against each other that a new trial of all issues is required against Dr. Alvord. I would sustain the verdict as to Dr. Fisher.

The majority state that "whether Aetna should be held liable for Wellcome's misconduct is an issue to be addressed by the District Court." There is no issue on this because Wellcome was Aetna's agent without doubt. See National Farmers' Union Property & Casualty Co. v. O'Daniel (U.S.C.A. 9), 329 F.2d 60, (1964), decided in the Ninth Circuit and arising out of Montana.

Because the policy of insurance gives the insurance company the right to defend all actions, to control the litigations, and to pick counsel, it is solely responsible for the improper actions of counsel during the trial. Counsel is personally liable for costs under § 37-61-42, MCA, but Aetna is likewise liable as the principal. The decision in the Ninth Circuit case grew out of a judgment by Judge William J. Jameson in Jessen v. O'Daniel (D. Mont. 1962), 210 F.Supp.317 and the Ninth Circuit Court affirmed Judge Jameson on the issue of the attorney in that case being the agent of the company.

It is true that the amount of sanctions here is insufficient, and that the case must be returned to the District Court for a redetermination of the sanctions. For that reason the notice-to-Aetna argument is moot as stated in the majority opinion. However, the District Court must

- 13 -

further consider sanctions to recompense Dr. Fisher for the second trial. The evidence shows that Dr. Fisher was not causally responsible as a matter of law. The retrial of the cause ought to be limited to a case between the decedent and Dr. Alvord. The jury in this case determined that the decedent was not negligent and as a matter of law there was no way she could have been negligent, since she was semi-conscious or in a coma most of the time. The retrial should consider solely the question whether Alvord was guilty of acts of negligence which were a legal cause or a proximate cause of her death. I would instruct the jury to find the full amount of the damages without regard to any settlements that have been made. The reduction for settlements could be taken care of after the jury returns it verdict, if it found for the plaintiff. State ex rel. Deer & Co. v. District Court (1986), 730 P.2d 396, 43 St.Rep. 2270.

What keeps coming through is that in the two cases that have been tried thus far, the decedent in this case had been denied recovery and that result is absurd. It is a result that has been brought about in each case by the improper actions of Wellcome. He and his company should pick up the tab for the costs of the other parties thus far (except for discovery costs which must be used upon the third trial) and I would propose a further sanction that Wellcome could no longer represent Aetna or Alvord in this case since he is unable to comply with  strongly expressed rulings of the trial court and this Court and the canons of ethics.

John C. Sheehy
Justice

- 14 -