**PAGE WELLCOME, PROFESSIONAL SERVICE CORP., and Page Wellcome, individually, Plaintiffs,**

v.

**The HOME INSURANCE COMPANY, Defendant.**

**No. CV–89–055–BU–PGH.**

United States District Court, D. Montana, Butte Division.

Jan. 14, 1991.

Page Wellcome, Bozeman, Mont.

Page Wellcome, Leibman, Reiner & McNeil, San Diego, Cal.

Robert Emmons, Great Falls, Mont., for Page Wellcome.

Dennis McCafferty, James, Gray & McCafferty, Great Falls, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

The plaintiff, Page Wellcome, an attorney admitted to the Bar of the State of Montana, and practicing law as a professional service corporation entitled Page Wellcome, PSC, brings this breach of contract action against the defendant, The Home Insurance Company ("Home"), seeking a declaration of the parties' rights and liabilities under a policy of professional liability insurance issued to Wellcome by the Home. Specifically, Wellcome seeks a declaration that Home breached the terms of the insurance contract by failing to indemnify Wellcome for a certain monetary sanction imposed upon Wellcome by the District Court of the Eighteenth Judicial District of the State of Montana. The sanction was imposed upon Wellcome for his conduct during the course of a civil trial held before that tribunal in 1985. *See, Kuhnke v. Fisher*, 210 Mont. 114, 683 P.2d 916 (1984) (*"Kuhnke I"*); *Kuhnke v. Fisher*, 227 Mont. 62, 740 P.2d 625 (1987) (*"Kuhnke II"*). Wellcome also predicates his claim for breach of contract upon the additional ground that Home, contrary to the provisions of the subject policy, failed to provide Wellcome's defense in regard to proceedings resulting in imposition of the sanctions at issue.

The matter is presently before the court on cross-motions for summary judgment. By order entered March 1, 1989, the United States Magistrate for the District of Montana, the Honorable Robert M. Holter, was designated, under authority of 28 U.S.C. § 636(b)(1)(B) and (C), to conduct a hearing, and to submit to the court his proposed findings of fact and recommendations for the disposition of the pending motions for summary judgment. The Magistrate filed his report with the court on November 17, 1989, recommending that summary judgment be entered in favor of Home Insurance. Wellcome timely filed his objections to the Magistrate's findings and recommendation, requesting the court, in essence, to reject in whole the findings and recommendations made by the Magistrate. In accordance with the prescription of 28 U.S.C. § 636(b)(1), the court undertakes a *de novo* determination of the issues addressed by the Magistrate's report.

### I.

This action has its genesis in a medical malpractice lawsuit wherein Wellcome represented one of the named defendants in that action. The facts underlying the malpractice action, which are succinctly set forth in the Montana Supreme Court's opinion in *Kuhnke II*, are of no pertinence to the case at bar. The first trial of the malpractice action resulted in a jury verdict in favor of the defendants, but the judgment was reversed upon appeal and the case remanded for a new trial based upon the misconduct of Wellcome during the course of trial. *Kuhnke I*, 683 P.2d at 919–923. The malpractice action again proceeded to trial, with the jury ultimately entering a verdict against one of the defendants but not against Wellcome's client. *See, Kuhnke II*, 740 P.2d at 627. Kuhnke filed a motion for new trial and/or judgment notwithstanding the verdict and re-

quested the trial court to impose sanctions against Wellcome for his conduct during the course of trial. The trial court ultimately denied the motion for new trial and judgment notwithstanding the verdict, but imposed a sanction in the amount of $20,000.00 against Wellcome individually and as agent of Aetna Insurance Company, the liability insurance carrier for Wellcome's client. *Kuhnke II,* 740 P.2d at 627–628. In sanctioning Wellcome, the trial court stated:

> [T]he Court believes in the proper administration of justice and in the inherent powers of the Court to see that cases are properly tried according to the Canons of Ethics and the Court and Legislative Rules. Case law demands that sanctions be imposed against Mr. Wellcome and his carrier Aetna.... The Court warned Mr. Wellcome at preliminary and pretrail [sic] conferences that any conduct resulting in the reversal of the first case would not be tolerated, and that if it did occur the Court would grant a mistrial and impose the cost of ... against Mr. Wellcome and his carrier. Warning was clearly made and consented to by Mr. Wellcome. Notwithstanding that understanding, counsel persisted in injecting positions in voir dire, examination of witnesses, and in argument to the jury, which were contrary to the orders of the court and the mandates of [*Kuhnke I*].

The issue placed before the court for determination by the parties' cross-motions for summary judgment is whether the sanction imposed by the trial court against Wellcome falls within the coverage afforded by the contract for professional liability insurance extant between Wellcome and Home Insurance. The correlative claim pressed by Wellcome is whether under the terms of the insurance policy Home was required to provide a defense to Wellcome, regardless of the fact coverage for the sanction did not exist under the terms of the policy.

## II.

Analysis must necessarily begin with a recitation of those provisions of the insurance contract which bear upon the dispute. The pertinent provisions provide:

## COVERAGE

**Professional Liability and Claims Made Clause.** Pay on behalf of the Insured all sums in excess of the deductible amount stated in the Declarations which the insured shall become legally obligated to pay as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD.

(a) by reasons of any act, error or omission in professional services rendered or that should have been rendered by the Insured or by any person for whose acts, errors or omissions the Insured is legally responsible, and arising out of the conduct of the Insured's profession as a lawyer or notary public;

(b) because of personal injury and arising out of the professional services of the Insured as a lawyer or notary public;

\* \* \* \* \* \*

Damages, whenever used in this policy, means a monetary judgment or settlement and does not include fines or statutory penalties whether imposed by law or otherwise, nor the return of or restitution of legal fees, costs and expenses arising therefrom.

\* \* \* \* \* \*

## EXCLUSIONS

**I. This policy does not apply:**

(a) to any judgment or final adjudication based upon or arising out of any dishonest, deliberately fraudulent, criminal, maliciously or deliberately wrongful acts or omissions committed by the Insured. However, notwithstanding the foregoing, the Company will provide a defense for any such claims without any liability on the part of the Company to pay such sums as the Insured shall become legally obligated to pay as damages.

The Home initially denied Wellcome's claim for indemnification, having concluded the sanction did not constitute "damages" as defined in the subject policy. The sanction, in Home's view, constituted a "fine" or "statutory penalty" which, of course, are specifically excluded in the definition of

"damages". As an alternate basis for denying coverage, Home relied upon the "wrongful acts exclusion" contained in the exclusions section of the subject policy, as set forth verbatim above. Home's reliance upon the wrongful acts exclusion was based upon its opinion that the trial conduct of Wellcome, which compelled the trial court to impose a sanction, was "deliberately wrongful" as that term is contemplated by the exclusion provision of the policy.

Wellcome presses that the sanction imposed by the trial court was not a "fine" or "statutory penalty" paid to the court. Rather, he submits the sanction constituted, in essence, damages awarded to a party, under authority of Mont.Code Ann. § 37–61–421 (1985), for excess costs incurred by the plaintiff as a result of the adverse party's conduct.[1]

The order of the trial court imposing the sanction was issued December 11, 1985. Wellcome advised Home Insurance by correspondence November 19, 1985, of the impending sanction. Home informed Wellcome of its decision declining coverage on January 2, 1986. Home referred Wellcome to the definition of "damages" set forth in the coverage section of the insurance policy necessarily implying that the sanctions were tantamount to "fines" or "statutory penalties" expressly excluded from the definition of "damages" as contemplated by the policy. The rights and obligations of the parties under the policy, Wellcome submits, were to be determined as of that point in time, and Home, having failed to indicate its reliance upon any exclusion contained in the policy, is precluded from relying upon any other exclusion to defeat Wellcome's claim for breach of contract. Restated, Wellcome contends Home's purported breach of contract must be determined solely with reference to the grounds asserted by Home in initially denying coverage, since the rights and obligations of the parties were "fixed and determined at that point." From this premise, Wellcome suggests any exclusions of the insurance policy later relied upon by Home and any observations by the Supreme Court in *Kuhnke II* are extraneous to a determination of whether Home breached the terms of the insurance contract when it denied coverage on January 2, 1986.

For purposes of analysis, the court accepts Wellcome's premise and resultant conclusions pertaining to the irrelevancy of the policy exclusions and the observations rendered by the Montana Supreme Court in *Kuhnke II.*[2] The assumption stated, the court proceeds to determine whether or not it may be determined as a matter of law that Home breached the terms of the subject insurance contract by refusing to indemnify Wellcome for the sanctions imposed by the trial court upon the ground those sanctions did not constitute "damages" within the contemplation of the contract.

Reduced to its essence, Wellcome's argument is simply that the sanctions imposed

---

1. It is imperative to note that in objecting to the Magistrate's report, Wellcome takes issue with the Magistrate's conclusion that the trial court relied upon Mont.Code Ann. § 37–61–421 (1985) in levying the sanction against him. Wellcome accurately notes section 37–61–421 was referred to by the Montana Supreme Court in its opinion in *Kuhnke II,* but was not referenced by the trial court in imposing the sanction. Rather, the trial court made the generalized observation that the imposition of the sanction was important to insure the proper administration of justice, and to serve as notice to avoid the type of conduct in which Mr. Wellcome had engaged. Wellcome impresses upon the court that the observations by the Montana Supreme Court in *Kuhnke II,* especially its allusion to the fact the sanction was imposed pursuant to Mont.Code Ann. § 37–61–421 (1985) are totally irrelevant to a determination of whether Home breached the terms of the insurance contract by refusing to indemnify Wellcome. The distinction is critical from Wellcome's perspective, in view of the position he adopts regarding the coverage issue.

2. The observation of principal concern is the Montana Supreme Court's suggestion that the sanctions were imposed by the trial court pursuant to Mont.Code Ann. § 37–61–421 (1985), which provides that any attorney or party who unreasonably multiplies the proceedings in a case "may be required by the court to satisfy personally the excess costs, expenses and attorney's fees reasonably incurred because of such conduct." The court accepts, for present purposes, Wellcome's conclusion that Mont.Code Ann. § 37–61–421 is irrelevant to a determination of the issue of insurance coverage presented by this controversy.

by the trial court were not a "fine" or "statutory penalty" as those terms are set forth in the exceptive clause of the coverage provisions of the policy defining damages. Characterizing the policy as ambiguous with respect to its definition of damages and the correlative excepting clause, Wellcome invokes the principle of construction, well established in Montana law, that policy ambiguities must be construed against the insurance company. *See, e.g., Lindell v. Ruthford,* 183 Mont. 135, 598 P.2d 616 (1979). Contending his conduct during the closing argument, which prompted the sanction, was not deliberate and was not the subject of an automatic fine or statutory penalty, Wellcome submits coverage for the sanction was available under the terms of the policy.[3] The court disagrees.

Construction of insurance contracts in Montana is governed by the general law of contract interpretation contained in Mont. Code Ann. Title 28, Chapter 3, and the decisional law which has developed thereunder in the context of insurance. Consequently, absent an ambiguity, the language of an insurance contract governs its interpretation. *See, Schell v. Peters,* 147 Mont. 21, 26, 410 P.2d 152, 155 (1966); Mont.Code Ann. § 28–3–401 (1983). Under Montana law, the interpretation of the language of a contract and whether an ambiguity exists is a question of law for the court to determine in the first instance. *Schell v. Peters,* 410 P.2d at 152; *United States Fidelity & Guaranty Co. v. Newman,* 656 F.2d 457, 459 (9th Cir.1981) (construing Montana law). In that regard, the Montana Supreme Court has emphasized that "[a]mbiguity does not exist just because a claimant says so. It can only exist where the word-

ing or phraseology of a contract is reasonably subject to two different interpretations." *Holmstrom v. Mutual Benefit Health & Accident Assn.,* 139 Mont. 426, 428–429, 364 P.2d 1065, 1066 (1961). In accordance with the foregoing principles of construction, this court has stated that where the language of an insurance policy admits of only one meaning there is no basis for interpretation of the policy under the guise of ambiguity. *Transamerica Ins. Group v. Osborn,* 627 F.Supp. 1405, 1408 (D.Mont.1986) (*citing, Universal Underwriters Ins. Co. v. State Farm Mutual Ins. Co.,* 166 Mont. 128, 531 P.2d 668 (1975)).

Contrary to the position asserted by Wellcome, the court finds the pertinent language of the policy defining damages and excepting "fines" and "statutory penalties" is not ambiguous. The court agrees with the Magistrate that the language utilized in that provision of the policy defining damages, and specifically the excepting clause of that provision, is not ambiguous.[4]

It is well established in Montana law that an ambiguity can only exist where the wording or phraseology of a contract is "reasonably subject to two different interpretations." *Holmstrom v. Mutual Benefit Health & Accident Assn.,* 364 P.2d at 1066. Accepting Wellcome's position that the monetary sanction was not imposed by the trial court pursuant to statutory authority, but was based upon the court's inherent authority, focus must be brought to bear upon the term "fine" as used in the excepting clause. The court does not find the term as reasonably subject to two different interpretations. Rather, the term, whether used in a formal context or in ordinary parlance, means the payment of

---

**3.** The court's jurisdiction over the subject matter of this action is based upon diversity of citizenship. 28 U.S.C. § 1332. Accordingly, the substantive law of Montana controls the rights and liabilities of the parties. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**4.** The Magistrate noted that in imposing, and upholding, the sanction imposed upon Wellcome, the state court consistently utilized the term "sanction" as opposed to "penalty". Observing that sanction is defined by BLACK'S LAW DICTIONARY as a part of the law which is

designed to secure enforcement by imposing a penalty for its violation. BLACK'S LAW DICTIONARY 1290 (5th ed. 1979). The Magistrate concluded the term "sanction" is synonymous with the term "penalty". Having concluded the trial court imposed a sanction upon Wellcome pursuant to Mont.Code Ann. § 37–61–421, the Magistrate viewed the sanction as the equivalent of a "statutory penalty" within the meaning of the excepting clause to that provision of the policy defining damages.

money imposed upon a person for misconduct. The trial court imposed a payment of money upon Wellcome for misconduct. Granted, in effecting imposition of the payment for misconduct, the trial court used the terminology common to the legal profession to define the imposition of payment of money for misconduct, *i.e.*, sanction. The terminology utilized, however, does not change the essence of the penalty or the coverage under the policy. The unambiguous policy language excepted from coverage payments of money imposed for misconduct. Consequently, the payment of money imposed by the trial court upon Wellcome for his misconduct is excepted from coverage under the policy.[5]

Wellcome next invokes the doctrine of "reasonable expectations" suggesting the doctrine requires the contract to be construed in favor of providing coverage for the sanction imposed by the trial court. The doctrine, however, is of no benefit to Wellcome under the facts of this case.

The doctrine of "reasonable expectations" is, of course, recognized in Montana, but its precise dimensions have never been defined. *See, Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 180, 656 P.2d 820, 824 (1983). The doctrine, however, has been utilized in other jurisdictions to resolve ambiguities in insurance policies in order that the policies comport with the insured's reasonable expectations. *See, e.g., Auto Owners Ins. Co. v. Jensen*, 667 F.2d 714, 721 (8th Cir.1981); *Progressive Casualty Ins. Co. v. Marnel*, 587 F.Supp. 622 (D.Conn.1983); *Wilson v. Ins. Co. of North America*, 453 F.Supp. 732 (N.D.Cal. 1978). The rationale upon which the doctrine is based is in accord with Montana's strong public policy of protecting insureds from seeing insurance coverage defeated by an insurer's use of confusing or ambiguous policy language. *See, Rodli v. Ameri-*

*can Bankers Ins. Co. of Florida*, 44 Mont. St.Rptr. 1888 (D.Mont.1987). In applying the "reasonable expectations" doctrine, this court has recognized that the doctrine entitles an insured to all the coverage she may reasonably expect to be provided under the policy and that the expectation is defeated only by "an unequivocally conspicuous, plain and clear manifestation of the [insurer's] intent to exclude coverage." *United Pacific Ins. Co. v. First Interstate Banc–Systems*, 664 F.Supp. 1390, 1394 (D.Mont.1987) (citations omitted).

Although some jurisdictions view the doctrine as applicable to all questions of insurance coverage, whether or not an ambiguity exists in the policy, *see, e.g., Corgatelli v. Globe Life Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975), this extension appears to be the minority view. *See, Auto–Owners Ins. Co. v. Jensen, supra*, 667 F.2d at 721, n. 9. The language utilized by the Montana Supreme Court in *Royle*, indicating the expectation is defeated only by clear manifestation of the insurer's intent to exclude coverage, indicates the Montana court follows the majority view. Consequently, Wellcome may not rely upon the doctrine to create coverage which, by the clear terms of the policy, did not exist.

### III.

The second aspect of Wellcome's position focuses on whether Home breached the contract of insurance by failing to assume responsibility to provide Wellcome a defense to the trial court's imposition of the sanction against Wellcome in the *Kuhnke II* litigation. The sanction was imposed for Wellcome's violation, during closing argument, of the trial court's orders *in limine*. Home concluded it was under no duty to provide Wellcome a defense, since, in its opinion, there existed no coverage under the pertinent provisions of

---

5. It is undisputed that in 1986 Home revised the excepting clause contained in the damage provision of its standard professional liability policy to include the term "sanctions" along with the terms "fine" and "statutory penalties". Wellcome suggests this revision must be considered in determining whether the language of the excepting clause as it existed in Wellcome's policy was ambiguous. Wellcome vehemently asserts this modification establishes the ambiguity of the language utilized by Home prior to 1986. The revision, however, is irrelevant to determination of whether the language of the policy extant between Wellcome and Home is ambiguous.

the policy and the definition of "damages", wherein "fines" and "statutory penalties" were excepted. Wellcome, however, retorts that notwithstanding the fact it was ultimately determined that coverage under the policy for the sanction imposed did not exist, that fact is not determinative of Home's duty to defend.

Wellcome relies upon the "exclusions" section of the policy, specifically that paragraph denominated I(a) which has previously been set forth verbatim. Wellcome suggests the duty to defend under the "exclusions" section stands independent of the coverage provision of the policy and the fact the "fines" and "penalties" excepting clause does not specifically or expressly abrogate that duty. Restated, Wellcome views the language of the exclusion clause as establishing a duty to defend regardless of the fact there exists no duty to indemnify under the coverage provisions of the policy. Characterizing his conduct which prompted imposition of the sanctions as an "error or omission in judgment" made in "good faith" and resulting from "zealous advocacy", Wellcome advocates his actions were not "deliberately wrongful" within the contemplation of the exclusions section of the policy. The intent of the "exclusions" section, so the argument goes, is that the Home provide the insured a defense until the nature of the insured's conduct is ultimately determined through resolution of the litigation. The essence of Wellcome's argument is that the factual determination in the underlying litigation as to whether his conduct was negligent or intentional was a necessary prerequisite to Home's declination of Wellcome's request for a defense.

In response, Home contends the factual determination regarding the nature of Wellcome's conduct was resolved by the trial court and affirmed by the Montana Supreme Court. Contrary to Wellcome's assertion, Home contends the issue is not open for redetermination by this court. Home argues it was entitled to rely on the factual determinations made by the courts of the State of Montana in refusing to provide Wellcome a defense. In Home's mind, the only question which remained

was whether the sanctions imposed by the trial court were subject to the excepting clause of the damage definition contained in the coverage provisions. Based upon its conclusion, no coverage was afforded by the policy and Home concluded it had no duty to defend.

Both the duty to indemnify and the duty to defend arise from contract and the extent of both duties must be determined from the language of the insurance contract. It is often stated in insurance litigation that where there exists no obligation on the part of the insurer to indemnify under the "coverage" provisions of a policy, there exists no obligation to defend. *See, e.g., Mutual Service Casualty Ins. Co. v. McGehee*, 219 Mont. 304, 711 P.2d 826 (Mont.1985); *Burns v. Underwriters Adjusting Co.*, 234 Mont. 508, 765 P.2d 712 (1988). This conclusion, however, depends on the contract of insurance itself. This point bears particular emphasis in the present case since Wellcome interprets the policy of insurance at issue as having required Home to defend Wellcome against the imposition of sanctions by the trial court, regardless of the fact a duty to indemnify Wellcome may have ultimately been determined not to exist under the terms of the policy. Wellcome strenuously argues that the acts he performs in his professional capacity are only excluded from the "coverage" terms of the policy through paragraph I(a) of the "exclusions" section of the policy, and only if those acts are dishonest, deliberately fraudulent, criminal or malicious, or deliberately wrongful. Until that point in time it was ultimately determined that his acts were intentional, so as to fall within the "deliberately wrongful" exclusion, Wellcome submits Home had a duty to provide him a defense. The court disagrees.

The coverage section of the policy at that paragraph denominated II provided in pertinent part: "... With respect to the insurance afforded by this policy, the company shall defend any claim against the insured including the appeal thereof seeking damages to which this insurance applies even if any of the allegations of the suit are

groundless, false or fraudulent." The sanction which lies at the heart of this controversy, as has already been determined by the court, was not "damages" as that term was defined within the text of the policy. Consequently, by the clear and unequivocal language of the policy, Home had no duty to defend Wellcome with respect to the sanction imposed by the trial court in the *Kuhnke* litigation. Contrary to the position advocated by Wellcome, paragraph I(a) of the "exclusions" provision of the policy does not somehow supersede the language of paragraph II of the coverage section of the policy. Whether Home was required to provide Wellcome a defense to the sanction imposed by the trial court was not dependent upon a fact specific determination being made as to whether Wellcome's conduct, leading to the imposition of those sanctions, was negligent or intentional in character.

Therefore, for the reasons set forth herein, the court, having conducted a *de novo* review of the record in this matter, deems it appropriate to GRANT the defendant's motion for summary judgment and, accordingly, DENY the plaintiff's cross-motion for summary judgment.

IT IS SO ORDERED.

The Clerk is directed to enter JUDGMENT accordingly.