FILED

September 15 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0732

DA 14-0732

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 274

PATRICIA O'CONNOR,

> Plaintiff and Appellant,

v.

REBECCA JAYNE GEORGE,

> Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DDV 2013-410
Honorable James P. Reynolds, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:

> John C. Doubek, Doubek, Pyfer & Fox, LLP, Helena, Montana

> For Appellee:

> Randall J. Colbert, Tessa Keller, Garlington, Lohn & Robinson, PLLP, Missoula, Montana

Submitted on Briefs:   July 8, 2015
Decided:   September 15, 2015

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    Patricia O'Connor brought this negligence action for injuries she allegedly sustained when her vehicle was rear-ended by Rebecca George.  Following a jury award of $3,665, O'Connor moved for a mistrial and for a new trial.  The First Judicial District Court, Lewis & Clark County, denied her motions and she filed a timely appeal.  We reverse and remand.

## ISSUE

¶2    The issue on appeal is whether the District Court manifestly abused its discretion when it denied O'Connor's motion for a new trial based upon defense counsel's failure to disclose that some of George's photographic evidence depicted damage from another accident.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On September 30, 2011, O'Connor was stopped at a railroad crossing in Helena, Montana, when she was rear-ended by George.  Both vehicles sustained minor damage, and State Farm, George's insurer, resolved O'Connor's property damage claim; consequently, property damages are not at issue.  O'Connor alleges that in addition to property damage, however, she sustained serious physical injuries in the collision.  George admitted liability for the incident, but disputed the extent of O'Connor's injuries.

¶4    In May 2013, O'Connor sued George for personal injuries, seeking past and future medical bills, physical and emotional pain and suffering, loss of earning capacity, and loss of established course of life.

2

¶5     State Farm investigated the incident and, at O'Connor's request, provided her with various materials from the investigation, including approximately twelve photographs purportedly showing damage to the parties' vehicles resulting from the collision. O'Connor was deposed in April 2014 and was shown the accident photographs for the first time. The photographs showed damage to the front of George's vehicle. O'Connor did not conduct discovery with respect to the photographs. At her deposition, O'Connor testified that George's vehicle was going between thirty and forty miles per hour when it struck her.

¶6     In June 2014, O'Connor filed a motion in limine seeking to preclude the damage photographs from being introduced at trial. O'Connor anticipated that George would argue that because the pictures depicted relatively minor vehicle damage, O'Connor's claim of injury was exaggerated. George opposed O'Connor's motion and the District Court denied the motion, allowing the photographs to be introduced. The court agreed, however, to offer a cautionary jury instruction concerning the jury's use of the photographs.

¶7     The District Court conducted a three-day jury trial commencing on September 9, 2014, nearly three years after the accident. Following voir dire but before opening statements, and outside of the jury's presence, the attorneys presented their exhibits to the court, including the photographs of the damage to George's vehicle. Both attorneys informed the court that the exhibits were stipulated. Once the jury was seated, O'Connor called George as her first witness. When asked if the photographs accurately depicted the damage her vehicle suffered during the accident with O'Connor, George testified that

3

several of the photographs did not reflect damage sustained in her accident with O'Connor, but rather reflected damage to her vehicle caused by another accident occurring one year later in which George, traveling at sixty miles an hour, hit a bird. O'Connor's counsel expressed obvious surprise at George's response and shortly thereafter ceased questioning George. George's counsel declined to cross-examine his client at that time.

¶8 The following day, O'Connor testified extensively on direct examination as to her injuries and treatment. On cross-examination, George's counsel questioned her further about her injuries and the extent of the damage to George's car. O'Connor stated that George's car had scratches and cracks around the grille after the accident. George's counsel then showed O'Connor two photographs of George's damaged vehicle and asked her if those photographs showed "the cracks [she was] talking about." O'Connor replied that she believed the photos did. George's counsel then told the jury that "We'll have our client–she will testify shortly as to what all that means." Counsel did not inform O'Connor that the photographs he had shown her were the photographs of the bird accident that occurred one year after O'Connor's accident.

¶9 After O'Connor rested her case and George began presenting her case-in-chief, O'Connor's counsel cross-examined George about the "bird accident" photographs. George testified that she was insured by State Farm Insurance Company at the time she had the accident with O'Connor and approximately one year later when she had the "bird accident." Both accidents were timely reported to the insurer. Subsequently, George discovered that her insurance company had conflated the two accidents, believing they

4

constituted a single accident. She tried to resolve this error without success and ultimately changed insurers as a result of the unresolved mistake. She testified that she did not know that State Farm had provided the "bird incident" photographs to the attorneys in the O'Connor case. When she discovered—on the Thursday before trial—that her attorney had the pictures showing the bird damage, she told her attorney that those pictures did not represent damages occurring in the accident with O'Connor. Defense counsel did not tell O'Connor about the mistake and did not withdraw the subject photographs as exhibits when he learned of the mistake. Instead, all the photos were introduced into evidence as stipulated.

¶10    O'Connor moved for a mistrial on the basis of surprise due to "the known misrepresentations concerning the photographs of the defendant's vehicle." O'Connor argued that, as soon as George's counsel learned that the incorrect photographs had been submitted, he was obligated to disclose this to O'Connor and the court. George opposed the motion, contending that O'Connor's counsel would have discovered the bird incident had he conducted discovery with respect to the photographs.

¶11    The court inquired of George's counsel why he would submit these photographs as exhibits if they did not reflect the damage sustained in the accident at issue in the trial. Counsel doggedly responded that he was obligated to submit all photographs, whether or not the damage was related to this accident. He said he didn't think the fact that the photographs reflected damage from another accident would be an issue, and maintained to the court that O'Connor could have freely discovered this fact had she undertaken pretrial discovery. When the court asked whether counsel had an obligation to either

5

withdraw the photos from the other accident or clarify what they represented, he responded that this is what discovery is for and that all of this information was accessible. He said that withdrawing the photos depicting damage from the other accident was not "something that even crossed [his] mind."

¶12 The District Court denied O'Connor's motion for a mistrial, though the court noted that it was "concerned over the fact that we have exhibits that have gone to this jury that are not relevant to the accident." The court gave the jury a cautionary instruction that, although the photographs may be considered in conjunction with other evidence "to determine the witnesses' credibility as to the speed of the impact" and "in consideration of the extent" of O'Connor's injuries caused by the collision, "injuries may vary from the force of an impact and the damage to the vehicles is not conclusive of what injuries the plaintiff may have sustained."

¶13 At the conclusion of trial, the jury returned a general verdict in favor of O'Connor, awarding her $3,665 in total damages. This award was far less than the $17,236 in medical expenses for which O'Connor sought recovery. It was also less than the award that George's counsel suggested might be reasonable during his closing argument. It is evident that the award included nothing for future medical expenses, physical and emotional pain and suffering, loss of earning capacity, or loss of established course of life.

¶14 On September 17, 2014, O'Connor filed a motion for a new trial and renewed her motion for a mistrial, arguing that she was prejudiced by George's failure to disclose that some of the damage depicted in the photographs was sustained in a later accident.

6

O'Connor argued that, had she known of the bird damage, she would have engaged an expert witness to testify about the damage to the vehicles from the parties' collision, and the potential for injury based upon those damages.

¶15 On October 28, 2014, the District Court issued an order denying O'Connor's motion for a new trial. The court found it "disturbing" that defense counsel did not disclose the bird damage, and noted that his actions "make this a much closer question that it would otherwise be." The court concluded, however, that O'Connor did not show how the admission of photographs depicting bird damage affected her substantial rights or materially altered the outcome of the trial. The court observed that, though the jury's verdict may have been based in part on the photographs, it also was based on other testimony and exhibits.

¶16 O'Connor appeals the District Court's denial of her motions.

**STANDARD OF REVIEW**

¶17 We review a district court's denial of a motion for a mistrial or a M. R. Civ. P. 59 motion for a new trial for a manifest abuse of discretion. *Willing v. Quebedeaux*, 2009 MT 102, ¶ 19, 350 Mont. 119, 204 P.3d 1248; *Kuhnke v. Fisher*, 227 Mont. 62, 68, 740 P.2d 625, 628 (1987). "A manifest abuse of discretion is one that is obvious, evident or unmistakable," *McDermott v. Carie*, 2005 MT 293, ¶ 11, 329 Mont. 295, 124 P.3d 168 (citation omitted), and "so significant as to materially affect the substantial rights of the complaining party." *Willing*, ¶ 19 (citation omitted). "A district court's determination of whether to grant a motion for a mistrial must be based on whether the [moving party] has been denied a fair and impartial trial." *Harding v. Deiss*, 2000 MT 169, ¶ 19, 300 Mont.

7

312, 3 P.3d 1286 (citation omitted). A district court "hears the entire trial and is in the best position to determine the prejudicial effect of attorney misconduct on the jury," *Dees v. Am. Nat'l Fire Ins. Co.*, 260 Mont. 431, 443, 861 P.2d 141, 148 (1993); *accord Kuhnke*, 227 Mont. at 68, 740 P.2d at 628. Accordingly, "this Court will not lightly disturb its ruling," *Mason v. Ditzel*, 255 Mont. 364, 376, 842 P.2d 707, 715 (1992).

## DISCUSSION

¶18 *Did the District Court manifestly abuse its discretion when it denied O'Connor's motion for a new trial based upon defense counsel's failure to disclose that some of George's photographic evidence depicted damage from another accident?*

¶19 Section 25-11-102, MCA, allows a district court to grant a motion for a new trial if the moving party's substantial rights are materially affected by (1) an irregularity in the proceedings which prevented either party from having a fair trial, or (2) surprise that ordinary prudence could not have guarded against. O'Connor contends that because defense counsel concealed the fact that the photographs depicted two different accidents, he was able to confuse the jury and make it appear that O'Connor was not credible. She argues that this manipulation of the evidence constituted an irregularity in the proceedings that prejudiced her right to a fair trial. We agree with O'Connor.

¶20 In concluding that O'Connor failed to show how the admission of the photographs of the bird damage affected her substantial rights or the outcome of the trial, the District Court failed to take into account the impact that the photograph evidence had on O'Connor's credibility. Counsel showed O'Connor one of the photographs depicting the bird damage, and asked her whether it reflected the cracks she had observed on George's vehicle after the accident, and she said yes. He then later elicited from George the

8

explanation that the damage shown in that photograph was sustained in a different accident a year later. This orchestration of the photographic evidence was intended to and did impugn O'Connor's credibility. Defense counsel then made the credibility of the witnesses the focus of his closing argument.

¶21 The District Court observed that the jury's verdict may have been based in part upon the photographs but it was also based upon other evidence, including the testimony of O'Connor's medical care providers. This may well be true. However, while the jury was certainly free to infer from the medical evidence that O'Connor exaggerated her injuries, it should have made such an assessment on the foundation of a fair proceeding. Because the photograph evidence made it appear that O'Connor was lying about the damage to the George vehicle as a result of the accident, her credibility was compromised before the jury even took into account the evidence concerning the extent of her injuries.

¶22 In *Cooper v. Hanson*, 2010 MT 113, 356 Mont. 309, 234 P.3d 59, we found that the district court manifestly abused its discretion when it denied the plaintiff's motion for a new trial. We reached this conclusion because of certain "well-placed" comments made by defense counsel in closing arguments that exploited juror concerns about rendering a verdict against a physician and maximized the prejudicial effect on the jury. *Cooper*, ¶ 40. Quoting *Havens v. State*, 285 Mont. 195, 945 P.2d 941 (1997), we observed that "there are certain instances in which the prejudicial matter at issue undermines the fairness to such a degree that a new trial is the only remedy." *Cooper*, ¶ 42. This is such an instance. Defense counsel undermined the fairness of this trial to such a degree that a new trial is the only remedy.

¶23 Finally, we find disturbing the recurring contention that O'Connor was at fault for not having taken George's deposition or propounded interrogatories about the damage shown in the photographs. Counsel told the jury in his closing argument that O'Connor should have asked George about the photographs before trial but did not. In other words, counsel's argument amounted to: "Even though we represented and stipulated that these photographs depicted the damage done during the parties' collision, it was O'Connor's fault for not discovering that our representation was false." On appeal, George continues to blame O'Connor for not conducting discovery regarding the photographs. This approach to litigation wholly undermines the goal of securing a "just, speedy, and inexpensive determination" of an action (M. R. Civ. P. 1), especially in a case of admitted liability, as here. It was perfectly reasonable for O'Connor to assume under these circumstances that she could forego the unnecessary expense of deposing the defendant or conducting discovery concerning the photographs of the defendant's damaged vehicle.

¶24 We conclude that counsel's misrepresentation regarding the photographs constituted an irregularity in the proceeding and deprived O'Connor of a fair trial.

## CONCLUSION

¶25 For the foregoing reasons, we conclude that the District Court manifestly abused its discretion in failing to grant O'Connor's motion for new trial. We reverse the jury's verdict and remand for a new trial.

/S/ PATRICIA COTTER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON

Justice Beth Baker, dissenting.

¶26    I share entirely the Court's assessment of defense counsel's conduct in this case. As the Court points out, however, this Court must find a manifest abuse of discretion in order to reverse the District Court. Opinion, ¶ 17. Because the District Court was "in the best position to determine the prejudicial effect of attorney misconduct on the jury," *Dees*, 260 Mont. at 443, 861 P.2d at 148, I would afford more deference to its decision not to grant O'Connor a new trial.

¶27    Although I agree with the Court that defense counsel's conduct constitutes "an irregularity in the proceeding" on behalf of an adverse party, the plaintiff is not entitled to relief on that ground unless the irregularity deprived her of a fair trial. Section 25-11-102(1), MCA. Further, to obtain a new trial on the ground of surprise, O'Connor must demonstrate not only that the facts causing the surprise had a material bearing on the case, but also that "the verdict or decision resulted mainly from these facts" and that "the result of a new trial without the surprise would probably be different." *Clark v. Bell*, 2009 MT 390, ¶ 30, 353 Mont. 331, 220 P.3d 650 (citations omitted).

¶28    Based upon its review and recollection of the entire trial, the District Court concluded that the bird damage photographs "did not materially affect the [trial's]

11

outcome." The court relied on all of the evidence, including notably that there was other testimony about the speed of George's vehicle and that the photographs were not a significant portion of the evidence pertaining to O'Connor's injuries.

¶29 George testified that the speed limit where the collision occurred was thirty miles per hour and that she normally drives twenty to twenty-five miles per hour on that route. George said that she saw O'Connor's vehicle just before the collision, that she braked "pretty hard" before hitting O'Connor, and that the collision felt "very light, like a little speed bump." George said that she did not feel any jolting motion and was not thrown forward in her seat. George also testified that none of her vehicle's air bags deployed and that her seatbelt never locked. O'Connor likewise testified that none of her vehicle's air bags deployed. She further testified that she was not pushed into the car stopped immediately in front of her, and she did not remember whether her car moved at all due to the collision's impact.

¶30 The jury also heard extensive testimony from O'Connor's physicians regarding her history of chronic pain, predating the collision.[1] O'Connor testified that she did not have lower back pain until after the collision. However, defense counsel produced treatment notes from O'Connor's chiropractor, Dr. Michael McClain, indicating that O'Connor complained of lower back pain in the summer of 2008; from a pain specialist indicating that she had numbness and tingling in her heels in 2007; and from a massage therapist indicating that O'Connor had pain radiating into her right hamstring and

---

[1] O'Connor does not challenge the admission of evidence concerning her preexisting injuries or condition.

numbness and tingling in her lower legs in 2007. Dr. McClain's treatment notes showed that he treated O'Connor for lower back pain more than twenty-five times in the summer of 2008. His notes from each session with O'Connor state, "Patient presents today with neck pain, mid-back pain, and lower back pain." O'Connor said she never told Dr. McClain that she had lower back pain, and she was unsure why she was treated for it. Defense counsel also questioned O'Connor's doctors about her two workers' compensation claims—one in 1999 and one in 2004—relating to neck injuries. She was still treating for the latter injury at the time of the collision.

¶31    Dr. Lennard Wilson, who conducted an independent medical examination of O'Connor, testified via video deposition that an examination of O'Connor's medical records prior to the collision and her current complaints indicated a chronic degenerative medical condition dating back to 1999. Dr. Wilson advised that O'Connor's chronic pain would be better managed through physical therapy than with the epidural injections she received earlier that year from her pain specialist, Dr. Steven Martini.

¶32    Dr. Wilson also testified that, in his January 22, 2014 examination, he found no evidence of nerve damage or permanent injury to O'Connor's lower back or to her right leg. Although Dr. Wilson surmised that O'Connor likely had some whiplash and lumbar strain due to the collision, he found no evidence indicating that the collision caused major clinical worsening of her neck or back pain. A September 5, 2012 report by Dr. Charles Anderson, who conducted electromyography and motor nerve conduction tests on O'Connor, likewise indicated no nerve damage. Although Dr. Martini diagnosed an

annular tear in O'Connor's lower back from his review of a June 2012 MRI,[2] Dr. Wilson and Dr. Philip Steele, O'Connor's orthopedic doctor, examined the same MRI and found no nerve damage or other injury to O'Connor's lower back.

¶33 Given the totality of the evidence, particularly O'Connor's history of chronic pain prior to the collision and the lack of concurrence by medical professionals on the cause of her pain, O'Connor has not demonstrated that the verdict "resulted mainly from" the facts causing the surprise. *Clark*, ¶ 30. Though both parties referred to the photographs depicting bird damage, each argued from the undisputed photographs about how much damage the accident caused. The District Court also gave an instruction cautioning the jury that minor damage to a vehicle does not necessarily mean that the occupant sustained minor injuries.

¶34 In *Cooper*, we examined the "cumulative prejudice" resulting from counsel's improper argument about a "black mark" on the defendant doctor's reputation, combined with "anxieties expressed by the jurors" during voir dire about the impacts on a physician of a malpractice judgment against him. *Cooper*, ¶¶ 38-43. The expressed concerns by members of the venire ("One juror voiced his belief that a plaintiff's verdict would be tantamount to a life sentence," *Cooper*, ¶ 38), taken together with counsel's appeal to passion and prejudice, rendered the trial unfair. Here, the District Court considered the cumulative record, having heard the voir dire, evidence, and argument both parties presented, and determined on balance that the trial was not unfair. Based upon the

---

[2] George challenged Dr. Martini's qualifications, pointing out that he had a history of licensing issues and no board certifications.

substantial conflicting evidence about O'Connor's injuries, the District Court rejected her claim that it was the extra crack in the bumper depicted in the bird damage photographs that caused the jury to discredit her theory of the collision and award minimal damages for her claimed injuries.[3] In light of the record, and applying the considerable deference due a trial court under the "manifest abuse of discretion" standard, I am unable to conclude that the court made an "obvious, evident or unmistakable" error in the exercise of its discretion. *McDermott*, ¶ 11.

¶35 The District Court, having heard the entire trial, was in the best position to determine whether defense counsel's misconduct prejudiced O'Connor's case. *Dees*, 260 Mont. at 443, 861 P.2d at 148. The District Court clearly considered all of the evidence, concluding that O'Connor "failed to show how the mistake in the photos affected her material rights." I would hold that O'Connor has not demonstrated that the trial as a whole was unfair or that the result of a new trial without the surprise bird photographs "would probably be different." *Clark*, ¶ 30. I would affirm the District Court's judgment.

/S/ BETH BAKER

---

[3] O'Connor does not raise a claim of insufficient evidence to support the jury's verdict. *See generally Murray v. Whitcraft*, 2012 MT 298, 367 Mont. 364, 291 P.3d 587.